UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
*Caption in Compliance with D.N.J. LBR 9004-2(c)*

Ciardi Ciardi & Astin
Albert A. Ciardi, III, Esquire
Jennifer E. Cranston, Esquire
Adrienne N. Roth, Esquire
One Commerce Square
2005 Market Street, Suite 1930
Philadelphia, PA 19103
Telephone: (215) 557-3550
Facsimile: (215) 557-3551

| | |
|---|---|
| In Re:<br><br>15-35 Hempstead Properties, LLC, et. al.,<br>Debtors. | CHAPTER 11<br><br>Case No.:  10-43178<br>Jointly Administered<br>With Case No.10-43180<br>Judge:  Gloria M. Burns |

**PLAN OF REORGANIZATION PROPOSED BY 15-35 HEMPSTEAD PROPERTIES, LLC AND JACKSON 299 HEMPSTEAD, LLC, DEBTORS <u>AND DEBTORS -IN-POSSESSION</u>**

Dated: January 3, 2011

**Albert A. Ciardi, III, Esquire**
**Jennifer E. Cranston, Esquire**
**Adrienne N. Roth, Esquire**
**CIARDI CIARDI & ASTIN**
**One Commerce Square**
**2005 Market Street, Suite 1930**
**Philadelphia, PA  19103**
**T: (215) 557-3550**
**F: (215)557-3551**

# TABLE OF CONTENTS

Page

I.     INTRODUCTION………………………………………………………….........1

II.    DEFINITIONS………………………………………………………………1

III.   CLASSIFICATION OF CLAIMS…………………………………………....6
       3.1.    Class 1, Priority Tax Claims………………………………………6
       3.2.    Class 2, Secured Claim of New York Community Bank ……………………….. 6
       3.3.    Class 3, Singer Financial Corporation ..................................…6
       3.4.    Class 4, Secured Claim of Atlantic City Water ...............................6
       3.5.    Class 5, General Unsecured Claims ……………………………………..6
       3.6.    Interest Holders................................................................6
       3.7.    Administrative and Priority Tax Claims …………………………………..6
       3.8.    Acceptance or Rejection of the Plan……………………………………7

IV.    TREATMENT OF CLASSES OF CLAIMS…………………………………… 7
       4.1.    Class 1………………………………………………………………7
       4.2.    Class 2………………………………………………………………7
       4.3.    Class 3………………………………………………………………8
       4.4.    Class 4………………………………………………………………8
       4.5.    Class 5………………………………………………………………9
       4.6.    Class 6………………………………………………………………9

V.     TREATMENT OF UNCLASSIFIED CLAIMS………………………………… 9
       5.1.    Administrative Claims ....................................................... 9

VI.    PROVISIONS FOR EXECUTION OF THE PLAN ....................................10
       6.1.    Possession of Assets ......................................................10
       6.2.    Execution of Documents...................................................10
       6.3.    Alterations, Amendments or Modification ................................10
       6.4.    Final Decree .................................................................10
       6.5.    Retention and Enforcement of Claims.....................................10
       6.6.    Transfer of Real Estate 11 U.S.C. § 1146(a) ............................10
       6.7     New Equity…………………………………………………………11

VII.   ADDITIONAL PROVISIONS APPLICABLE TO ALL CLASSES…………………11

VIII.  PROVISIONS GOVERNING DISTRIBUTIONS AND GENERAL PROVISIONS…..11
       8.1.    Distributions………………………………………………………11
       8.2.    Notices……………………………………………………………12
       8.3.    Default……………………………………………………………12
       8.4.    Compliance with Plan………………………………………………12

**IX.    EFFECTS                 OF                 CONFIRMATION**
..............................................................................13
9.1.    Discharge of Claims; Injunction ..................................................13
9.2.    Term of Injunctions or Stays .....................................................13
9.3.    Injunctions against Interference with Plan...............................13

**X.    CRAMDOWN PROVISIONS AND CONFIRMATION REQUEST** ........................13

**XI.    MODIFICATION OF THE PLAN** ..............................................................13
11.1.    Pre-Confirmation Modification ................................................13
11.2.    Pre-Consummation Modification .............................................14
11.3.    Non-Material Modifications ....................................................14

**XII.    RETENTION OF JURISDICTION** ..........................................................14

**XIII.    CAUSES OF ACTION** ...........................................................................14
13.1.    Litigation ...................................................................................15
13.2    Powers ........................................................................................15

**XIV.    MISCELLANEOUS** ................................................................................15
14.1.    Choice of Law ...........................................................................15
14.2.    Payment of Statutory Fees .......................................................15
14.3.    Discharge of Debtor ..................................................................15
14.4.    Discharge of Claims; Injunction ..............................................16
14.5.    Effect of Confirmation Order ...................................................16
14.6.    Severability ...............................................................................16
14.7.    Successors and Assigns .............................................................16
14.8.    Binding Effect ...........................................................................16
14.9.    Withholding and Reporting Requirements ...............................17
14.10   Executory Contracts and Unexpired Leases.............................17

**XV.    PROVISIONS FOR RESOLVING AND TREATING CLAIMS** .............17
15.1.    Objections ..................................................................................17
15.2.    Prosecution of Objections .........................................................17
15.3.    No Distributions Pending Allowance .......................................17
15.4.    Distributions After Allowance...................................................17

1

# ARTICLE I
## Introduction

On October 26, 2010, 15-35 Hempstead Properties, LLC (the "Hempstead Debtor") and Jackson 299 Hempstead, LLC (the "Jackson Debtor") Debtors and Debtors-in-Possession (hereinafter collectively referred to as the "Debtors") commenced separate bankruptcy cases by filing voluntary chapter 11 petitions under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code"). Subsequently thereto, the Debtors filed for authority to jointly administer the above-captioned cases and were granted same within the time limits prescribed by the Bankruptcy code. This document is the chapter 11 Plan (the "Plan") proposed by the Debtors (the "Proponents"). Sent to you in the same envelope as this document is the Disclosure Statement (the "Disclosure Statement") which has been approved by the United States Bankruptcy Court for the District of New Jersey (the "Court"), and which is provided to help you understand the Plan.

This is a reorganizing plan. In other words, the Proponents seek to accomplish payments under the Plan by continuing their businesses after the entry of the Confirmation Order. The Effective Date of the proposed Plan is forty (40) days after the Confirmation Order is entered by the Court.

# ARTICLE II
## Definitions

For the purposes of this Plan, the following terms shall have the respective meanings hereinafter set forth, such meanings to be equally applicable to the singular and plural forms of the terms defined except as the context otherwise requires. Any term defined in the Bankruptcy Code and not otherwise defined herein shall have the meaning specified in the Bankruptcy Code unless the context otherwise requires.

2.1.   "ACCOUNTS RECEIVABLE" means any account as that term is defined in Section 9106 of the New Jersey Uniform Commercial Code, 13 P.S. §1101, et seq. (the "NJ U.C.C."), and includes any right of the Debtor to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper (as those terms are defined in the NJ U.C.C.), whether or not it has been earned by performance.

2.2.   "ADMINISTRATIVE CLAIM" means a Claim incurred by the Debtors on or after the Petition Date and before the Effective Date for a cost or expense of administration of the chapter 11 case allowable under § 503(b) of the Bankruptcy Code and entitled to priority under § 507(a)(1) of the Bankruptcy Code.

2.3   "ADMINISTRATIVE CLAIMANT" means the holder of an Administrative Claim.

2.4   "ALLOWANCE DATE" means the date a Claim or Interest becomes an Allowed Claim or Allowed Interest, respectively.

1

2.5    "ALLOWED"  The use of the term "Allowed" with reference to a Claim or Interest (e.g., "Allowed Unsecured Claim") shall mean one which (a) is listed in the bankruptcy schedules or list of equity security holders (including any amendments thereto) filed in this case as of the confirmation date and (i) not listed therein as disputed, contingent or unliquidated or (ii) not objected to by the Debtors; (b) is set forth in a Proof of Claim or Interest properly filed in this case on or before the date fixed by the Bankruptcy Court (or by applicable rule or statutes as the last day for filing such proof, and as to which no objection is filed; or (c) is determined to be allowed in a Final Order.

2.6    "ALLOWED CLAIM"  means (a) a Claim that has been allowed by a Final Order; (b) a Claim which is specified herein to be an Allowed Claim; or (c) a Claim timely filed with the Office of the Clerk of the Court or scheduled by the Debtors in their Schedules as neither unliquidated, disputed or contingent and as to which Claim (i) no objection with respect to the allowance thereof has been or shall be interposed within the period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or orders of the Court, or (ii) as to which Claim either an objection to the Claim or an application to amend the Schedules with respect to a scheduled Claim has been interposed, which objection or application has been resolved by a Final Order to the extent such objection or application is determined in favor of the holder of such Claim.  Unless otherwise specified, "Allowed Claim" shall not include interest on the principal amount of such Claim accruing from or after the Petition Date.

2.7    "ALLOWED INTEREST"  shall mean an Interest (a) in respect to which a proof of interest has been filed with the Court within the applicable period of limitation fixed by Rule 3003 or (b) scheduled in the list of equity security holders prepared and filed with the Court pursuant to Rule 1007(b), in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3003 or an Order of the Court, or as to which any such objection has been determined by an order or judgment which is not longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding and as to which no appeal or certiorari proceeding pending.

2.8    "ASSETS"  means all of the Debtors' property, real and personal, tangible and intangible, including without limitation Accounts Receivable, goods, chattel paper, documents, instruments, money, fixtures, contract rights, Causes of Action, claims and rights of any kind, wherever situated, together with the proceeds thereof.

2.9    "BANKRUPTCY CODE" means chapter 11 of title 11 of the United States Code, as amended from time to time, applicable to this case as of the Petition Date.

2.10    "BANKRUPTCY COURT" or "COURT" means the United States Bankruptcy Court for the District of New Jersey.

2.11    "BANKRUPTCY RULES" means the Federal Rules of Bankruptcy Procedure, as amended from time to time promulgated by the Supreme Court of the United States.

2.12    "BAR DATE" means the last date fixed by order of the Court for the filing of proofs of claim.

2

2.13   "BUSINESS DAY" means any day except a Saturday, Sunday, or other day on which commercial banks located in New Jersey are authorized by law to close.

2.14   "CASE" means the reorganization case of the Debtors under Chapter 11 of the Bankruptcy Code presently captioned: In re: 15-35 Hempstead Properties, LLC No. 10-43178 (GMB) and Jackson 299 Hempstead, LLC no. 10-43180(GMB).

2.15   "CAUSES OF ACTION" means all claims and causes of action now owned or hereafter acquired by the Debtor, whether arising under the Code or other federal or state law, including, without limitation, any causes of action arising under Sections 544, 547, 548, 550, 551, 553 or other sections of the Code.

2.16   "CLAIM" means a claim against the Debtors within the meaning of Section 101(5) of the Bankruptcy Code and is intended to include, without limitation, any claim, suit, demand, note, liability, setoff, recoupment or charge, and any claim for reimbursement, contribution, indemnity or exoneration.

2.17   "CLAIMANT" A person or entity holding a Claim or Interest (including, his, her or its successors, assigns, heirs, executors, or personal representatives).

2.18   "CLASS" means a group of Claims, consisting of Claims which are substantially similar to each other, as classified pursuant to this Plan.

2.19   "CONFIRMATION DATE" means the date on which the Confirmation Order confirming the Plan at or after a hearing convened pursuant to §1129 of the Bankruptcy Code becomes a Final Order.

2.20   "CONFIRMATION HEARING" means the hearing at which the Court considers confirmation of this Plan.

2.21   "CONFIRMATION ORDER" means the order of the Court confirming the Plan pursuant to §1129 of the Bankruptcy Code.

2.22   "CONTESTED CLAIM" means any Claim as to which the Debtors or any other party in interest has interposed an objection, in accordance with the Bankruptcy Code and Bankruptcy Rules, which objection has not been determined by a final order or a claim which is scheduled as contingent or disputed.

2.23   "CREDITOR" means the holder of a Claim against the Debtors.

2.24   "DEBTORS" mean 15-35 Hempstead Properties, LLC and Jackson 299 Hempstead, LLC.

2.25   "DEFICIENCY CLAIM" means, with reference to a Creditor having an Allowed Secured Claim, that portion of the Creditor's Allowed Claim that is not an Allowed

3

Secured Claim only because (a) the monetary benefit derived from the exercise of any available right of setoff and the application to the Claim of the net proceeds available from disposition of Assets securing the Creditor's Allowed Claim is insufficient to permit payment in full of the Allowed Claim, or (b) a Final Order entered in a proceeding to determine the extent of the Secured Claim provides that part of the Creditor's Allowed Claim is not an Allowed Secured Claim based on a valuation of the Creditor's interest in the Debtor's interest in the Assets securing the Claim.

2.26    "DISPUTED CLAIM" means any Claim which is scheduled as disputed, contingent or unliquidated, or which is objected to in whole or in part before the Effective Date.

2.27    "DISTRIBUTION" means any payment by the Debtor to a Creditor on account of a Claim.

2.28    "EFFECTIVE DATE" means **forty days** after the Confirmation Order becomes a Final Order. However, at the option of the Debtors, a Confirmation Order subject to a pending appeal or certiorari proceeding may be considered a Final Order provided no order has been entered by any court of competent jurisdiction staying the effect of the Confirmation Order.

2.29    "FEE CLAIM" means a claim under § 330 or § 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in this Chapter 11 case.

2.30    "FINAL ORDER"  means (a) a judgment, order or other decree issued and entered by the Court, which judgment, order or other decree (i) has not been reversed or stayed and as to which the time to appeal has expired and as to which no appeal or petition for review, rehearing or certiorari is pending or (ii) with respect to which any appeal has been finally decided and no further appeal or petition for certiorari can be taken or granted; and (b) a stipulation or other agreement entered into which has the effect of any such judgment, order or other decree described in clause (a) above.

2.31    "IMPAIRED CLASS" means any Class of Claims which is impaired within the meaning of Section 1124 of the Bankruptcy Code.

2.32    "INSIDER" means any "insider" as that term is defined in Paragraphs (B), (E) or (F) of Section 101(31) of the Bankruptcy Code.

2.33    "INTEREST" means Interest in the Debtors of a holder of common stock issued by the Debtors prior to the Petition Date.

2.34    "LIEN"  means, with respect to any of the Assets of the Debtors, any mortgage, lien, pledge, charge, security interest, or other security device (including a lease which is not a true lease) or encumbrance of any kind affecting such Asset.

2.35    "MUNICIPAL TAX LIEN" means any lien of claim owed to a municipality, county or school district which would have lien priority over any mortgage

4

2.36    "PERSON" means a person within the meaning of Section 101(41) of the Bankruptcy Code.

2.37    "PETITION DATE" means October 26, 2010, the date upon which the Debtors filed their separate voluntary petitions.

2.38    "PETITIONS" means the voluntary petitions for reorganization filed by the Debtors with the Court pursuant to Chapter 11 of the Bankruptcy Code.

2.39    "PLAN" means this Plan of Reorganization, as it may be further amended, modified or supplemented from time to time, and any exhibits and schedules thereto.

2.40    "PLAN PROPONENTS" means the Debtors.

2.41    "PRIORITY NON-TAX CLAIM" shall mean a Claim or a portion of a Claim for which priority is asserted under § 507(a)(3), (4), (5), (6) or (7) of the Bankruptcy Code.

2.42    "PRIORITY TAX CLAIM" shall mean a Claim or a portion of a Claim for which priority is asserted under § 507(a)(8) of the Bankruptcy Code.

2.43    "PRO RATA" means with respect to any distribution to the holder of an Allowed Claim of a particular Class of the Plan on a particular date, the same proportion that the amount of such Allowed Claim bears the aggregate amount of all Claims of such Class, including Contested Claims.

2.44    "PROPONENTS" means the Debtors.

2.45    "REJECTION CLAIM" means any claim for amounts due as a result of the rejection of any executory contract or lease which is rejected by the Debtors by Final Order.

2.46    "SCHEDULES" means the schedules of assets and liabilities filed by the Debtors with the Office of the Clerk of the Court pursuant to Bankruptcy Rule 1007, as amended from time to time.

2.47    "SECURED CLAIM" shall mean a Claim that is (a) secured by a valid, perfected and enforceable Lien on Assets of the Debtors, to the extent of the value of the interest of the holder of such Secured Claim in such Assets; or (b) a claim which is specified herein as an Allowed Secured Claim, to the extent of the value of the interest of the holder of such secured claim in such assets.

2.48    "UNIMPAIRED CLASS" means any Class of Claims which is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

2.49    "UNSECURED CLAIM" means any Claim, whether or not disputed, liquidated or contingent, including a Rejection claim or a deficiency Claim arising out of any default

5

of the Debtors under a contract entered into by the Debtors prior to the Petition Date, other than an Administrative Claim, Priority Non-Tax Claim, Priority Tax Claim or Secured Claim.

## ARTICLE III
## Classification of Claims

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive under the Plan. A Proof of Claim asserting a claim which is properly included in more than one class is included in each such class to the extent that it qualifies within the description of such class.

3.1. **Class 1.        Priority Tax Claims.**  Class 1 consists of the Allowed Priority Claims under 11 U.S.C. Section 507 (a) (4). The Class 1 claims are not impaired under the Plan. The Priority Tax Claims consist of wage taxes owed by the Hempstead Debtor.

3.2 **Class 2.        Secured Claim of New York Community Bank** Class 2 consists of the secured claim of New York Community Bank ("NYCB").  The Class 2 claim is impaired.

3.3. **Class 3.        Secured Claim of Singer Financial Corporation.**  Class 3 consists of the secured claim of Singer Financial Corporation.  Class 3 is impaired.

3.4 **Class 4.        Secured Claim of Atlantic City Water.** Class 4 consists of the secured claim of  ACMUA, or any other person, municipality or party which holds a tax lien certificate or a tax claim.  The Class 4 claim is impaired.

3.5 **Class 5.        General Unsecured Claims.** Class 5 consists of the Allowed Unsecured Claims including all penalties of any priority claims not otherwise classified herein.  The Class 5 claims are impaired under the plan.

3.6 **Class 6.        Interest Holders.**  Class 6 consists of all holders of any interests, equity or common stock of Debtor.

3.6 Administrative and Priority Tax Claims.  As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims shall not be classified for purposes of voting or receiving distributions under the Plan.  Rather, all such claims shall be treated separately as unclassified Claims pursuant to the terms set forth in Article V of this Plan.

3.7 Acceptance or Rejection of Plan.  Each impaired class of Creditors with claims against the Debtors' estates shall be entitled to vote separately to accept or reject the Plan.  A class of Creditors shall have accepted the Plan if the Plan is accepted by at least two-thirds in the aggregate dollar amount and more than one-half in number of holders of the allowed Claims of such class that have accepted or rejected the Plan.  In the event that any impaired class of Creditors or Interest holders shall fail to accept the Plan in accordance with section 1129(a) of the Bankruptcy

Code, the Proponent will request that the Bankruptcy Court confirm the Plan in accordance with
section 1129(b) of the Bankruptcy Code

## ARTICLE IV
## Treatment of Classes of Claims

4.1.    **Class 1.**        **Priority Tax Claims**.  Class 1 is not impaired.  Except as
otherwise provided herein, the treatment and consideration to be received by Class 1 shall be in full
settlement, satisfaction, release and discharge of its respective claims and liens.

Class 1 Priority Claims shall receive one hundred (100%) percent of their claim on the
Effective Date.  The Hempstead Debtor owes $10,000 in wage taxes and penalties dating back to
2008.

4.2    **Class 2.**        **Secured Claims of New York Community Bank**  Class 2
consists of the claim of NYCB.  NYCB is secured by a first mortgage on the multi-family property
located at 101 Boardwalk, Atlantic City, New Jersey 08401.

A.        NYCB is a secured creditor in the amount of $17,170,000.00.  NYCB shall receive
the following treatment.

(i)        The existing claim of NYCB shall be paid as follows:

(a)        Debtors shall make interest only payments for twelve months
following the Effective Date.  The payments shall be made at the non-default rate beginning on the
Effective Date.

(b)        Commencing with the payment due on the thirteenth month following
the Effective Date, the Debtors shall make a monthly payment of principal and interest using a
twenty-five year amortization schedule.  The interest rate shall be the non-default rate.

B.        The Debtors shall provide additional payments to NYCB as follows:

(i)        For each condominium unit sold, the Debtor shall pay seventy-five percent
(75%) of the net proceeds to reduce the principal amount owed to Class 2.  The balance of the net
proceeds shall be applied to interest payments up to a 3 month reserve, with any remaining funds
reserved for improvements; and

(ii)        The Debtors shall have the right to pre-pay the outstanding loan balance at
any time during the floating rate or fixed rate period without penalty.

NYCB shall permit a distribution of excess cash only after achieving minimum debt
service coverage of 120% for a minimum of twelve (12) consecutive months.

4.3    **Class 3.        Secured Claim of Singer Financial Corporation.**  Class 3 consists of the secured claim of Singer.  Singer is secured by a second mortgage on the multi-family property located at 101 Boardwalk, Atlantic City, New Jersey 08401.

A.    Singer is a secured creditor in the amount of $98,000.00.  Singer shall receive the following treatment.

(i)    The existing claim of Singer shall be paid as follows:

(a)    Debtors shall make interest only payments for twelve months following the Effective Date.  The payments shall be at the non-default rate and commence on the Effective Date.

(b)    Commencing with the payment due on the thirteenth month following the Effective Date, the Debtors shall make a monthly payment of principal and interest using a twenty-five year amortization schedule with a 3 year balloon.  The interest rate shall be the non-default rate.

The Debtors shall have the right to pre-pay the outstanding loan balance at any time during the floating rate or fixed rate period without penalty

4.4    **Class 4.        Secured Claim of ACMUA and any Other Tax Lien Claim**.  Class 4 is impaired.  All claims of ACMUA or any municipality or any party or person holding a tax lien or tax lien certificate shall be paid over three years in equal payments of principal and interest at ten (10%) percent.

4.5    **Class 5.        Unsecured Claim.**  Class 5 is impaired.  Except as otherwise provided herein, the treatment and consideration to be received by Class 5 shall be in full settlement, satisfaction, release and discharge of its respective claims and liens against the Debtors.  The Debtors intend to pay ten percent (10%) of all Allowed Unsecured Claims to holders of Class 5, over five (5) years consisting of twenty (20) calendar quarters at half a percent (.5%) per quarter.  The total claims in Class 5 are approximately $6,220,804.22.  To the extent all Unsecured Claims are allowed, quarterly payments to Class 5 claimants would approximate $31,104.02.  These payments shall commence sixty (60) days after the Effective Date.

4.6.    **Class 6.        Interest Holders.**  All current interests, equity or common stock shall be retained by existing equity.

**ARTICLE V**
**Treatment Of Unclassified Claims**

8

5.1      Administrative Claims. All Administrative Claims shall be treated as follows:

a.      Time for Filing Administrative Claims. The holder of an Administrative Claim, other than (i) a Fee Claim or (ii) a liability incurred and paid in the ordinary course of business by the Debtors, must file with the Bankruptcy Court and serve on the Debtors and their counsel, notice of such Administrative Claim within thirty (30) days after the Confirmation Date. Such notice must include at minimum (i) the name of the holder of the claim, (ii) the amount of the claim and (iii) the basis of the claim. Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged.

b.      Time for Filing Fee Claims. Each professional person requesting compensation in the case pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code shall file an application for allowance of final compensation and reimbursement of expenses not later than ninety (90) days after the Confirmation Date. Failure to file the fee application timely shall result in the fee claim being forever barred and discharged. Nothing herein shall prohibit each professional person from requesting interim compensation during the course of this case pending Confirmation of this Plan. No motion or application is required to fix fees payable to the clerk's Office or the Office of the United States Trustee, as those fees are determined by statute.

c.      Allowance of Administrative Claims. An Administrative Claim with respect to which notice has been properly filed pursuant to Section 5.1(a) of this Plan shall become an Allowed Administrative Claim if no objection is filed within thirty (30) days of the filing and service of notice of such Administrative Claim. If an objection is filed within such thirty (30) day period, the Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by Final Order. An Administrative Claim that is a Fee Claim, and with respect to its fee application has been properly filed pursuant to Section 5.1(b) of the Plan, shall become an Allowed Administrative Claim only to the extent allowed by Final Order.

d.      Payment of Allowed Administrative Claim. Each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim upon the Effective Date, (ii) such other treatment as may be agreed upon in writing by the Debtors and such holder as long as no payment is made thereon prior to the Effective Date, or (iii) as may be otherwise ordered by the Court, provided that an Administrative Claim representing a liability incurred in the ordinary course of business by the Debtors may be paid in the ordinary course of business.

e.      Professional Fees Incurred After the Effective Date. Any professional fees incurred by the Debtor after the Effective Date must be approved by the Debtors and, thereafter, paid. Any dispute which may arise with regard to professional fees after the Effective Date shall be submitted to the Bankruptcy Court, which shall retain jurisdiction to settle these types of disputes.

**ARTICLE VI**
**Provisions For Execution of The Plan**

9

6.1    <u>Possession of Assets</u>. The Debtors shall remain in possession of all of their assets and real estate.

6.2    <u>Execution of Documents</u>. Prior to the Effective Date, the Debtors are authorized and directed to execute and deliver all documents and to take and to cause to be taken all action necessary or appropriate to execute and implement the provisions of this Plan.

6.3    <u>Alterations, Amendments or Modifications</u>. This Plan may be altered, amended, or modified by the Proponents before or after the Confirmation Date, as provided in §1127 of the Bankruptcy Code.

6.4    <u>Final Decree</u>.  After final distributions are made, the Debtors shall file a motion to close the case and request that a final decree be issued. The Debtors shall file all interim and final plan implementation reports and pay any fees to the Office of the United States Trustee.

6.5    <u>Retention and Enforcement of Claims</u>. Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce any and all claims of the Debtors on behalf of, and as a representative of, the Debtors or their estates, including, without limitation, all claims arising or assertable at any time under the Bankruptcy Code, including under 11 U.S.C. §§ 510, 542, 543, 544, 545, 547, 548, 549, 550, 552 and 553 thereof.

6.6    <u>Transfer of Real Estate Pursuant to 11 U.S.C. § 1146 (a)</u>. Any transfer of the real estate owned by the Debtors shall be free and clear of all transfer or stamp taxes under 11 U.S.C. §1146(a) up to and including the fifth anniversary of the Effective Date.

6.7    <u>Continued Rentals</u>.  The Debtors are currently receiving approximately $155,000 per month in rental payments.  The Debtors will fund the plan and pay their creditors with the funds generated from rental income.  The Debtors believe that it will receive $175,000 in rental payments for the month of February as more leases are being signed.

6.8    <u>Condominium Declaration</u>.  With the conversion of rental units into condominiums, the Debtors will supply the purchaser with the Condominium Declaration.  The Declaration includes a description of the property, the condominium form of ownership, and rules and regulations for the Condominium Association.  Specifically, the Condominium consists of 1.5 acres, one (1) building with eleven (11) levels, 359 residential units and four (4) commercial units, together with all appurtenant site improvements and includes all right, privileges, roads, waters and appurtenances thereto belonging or appertaining.

6.9    <u>Sale of Condo Units</u>. The Debtor plans to have 81 rental units converted into condominiums by May of 2011.  The condo units will sell from anywhere between $99,000 and $400,000, with the penthouses being sold for $1,400,000.

## ARTICLE VII
### Additional Provisions Applicable To All Classes

10

7.1    The payments, distributions and other treatments provided in respect of each Allowed Claim and Allowed Interest in the Plan shall be in full settlement and complete satisfaction discharge and release of such Allowed Claim and Allowed Interest.

7.2    Notwithstanding any of the provisions of the Plan specifying a date or time for the payment or distribution of consideration hereunder, payments and distributions in respect of any Claim or Interest which at such date or time are disputed, unliquidated or contingent shall not be made until such Claim or Interest becomes an Allowed Claim or an Allowed Interest, whereupon such payment and distribution shall be made promptly pursuant to and in accordance with this Plan.

## ARTICLE VIII
## Provisions Governing Distributions
## and General Provisions

8.1    <u>Distributions</u>.  Distributions pursuant to this Plan shall be made by the Debtors as provided herein and shall be made, unless otherwise provided herein, on the year anniversary of the Effective Date, or as soon as practicable thereafter or as may be otherwise ordered by the Court.

a.    <u>Delivery of Distributions</u>.  Distributions and deliveries to holders of Allowed Claims will be made at the addresses set forth on the proofs of claim filed by the holders (or at the last known address).  If any holder's distribution is returned as undeliverable, no further distributions to the holder will be made unless and until the Debtors are notified of the holder's then current address, at which time all missed distribution will be made to the holder without interest.  All Claims for undeliverable distributions must be made to the Debtors on or before the later of (i) the first anniversary of the Effective Date, or (ii) ninety (90) days after the respective distribution was made.  After that date, all unclaimed property will become property of the Reorganized Debtors, and the Claim of any holder with respect to such property will be discharged and forever barred.

b.    <u>Means of Cash Payment</u>.  Cash payments made pursuant to the Plan will be in United States funds, by check drawn on a domestic bank or by wire transfer from a domestic bank.  All cash distributions will be made by the Debtors.

c.    <u>Time Bar to Cash Payments</u>. Checks issued by the Debtors in respect of Allowed Claims will be null and void if not cashed within ninety (90) days of the date of their issuance.  Requests for re-issuance of any check shall be made to the Debtors by the holder of the Allowed Claim with respect to which the check originally was issued.  Any claim relating to a voided check must be made on or before the later of the (i) first anniversary of the Effective Date, or (ii) ninety (90) days after the date the check was voided.  After the date, all claims will be discharged and forever barred and the cash, including interest earned shall be revested in the Reorganized Debtors.

d.    <u>Setoffs</u>.  The Debtors may, but will not be required to, set off against any Claim and the payments to be made pursuant to the Plan in respect of the Claim, any claims of any nature whatsoever the Debtors may have against the claimant, but neither the failure to do so nor

11

the allowance of any Claim hereunder will constitute a waiver of release by the Debtors of any such claim the Debtors may have against such claimant.

        e.    <u>De Minimis Distributions</u>.  No cash payment of less than twenty-five dollars ($25.00) will be made by the Debtor to any creditor unless a request is made in writing to Debtors to make such a payment.

        f.    <u>Saturday, Sunday or Legal Holiday</u>.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but will be deemed to have been completed as of the required date.

        8.2    <u>Notices</u>. Any notice described in or required by the terms of this Plan or the Code and Rules shall be deemed to have been properly given when actually received, or if mailed, five (5) days after the date of mailing as such may have been sent by certified  mail, return receipt requested, and if sent to:

        (a)    If to the Debtors, addressed to:
        15-35 Hempstead Properties, LLC
        Jackson 299 Hempstead, LLC
        101 Boardwalk
        Atlantic City, New Jersey 08401

        (b)    With copies to Counsel:
        Albert A. Ciardi, III, Esquire
        Jennifer E. Cranston, Esquire
        Adrienne N. Roth, Esquire
        Ciardi  Ciardi & Astin
        One Commerce Square
        2005 Market Street, Suite 1930
        Philadelphia, PA  19103

        8.3    <u>Default</u>.  No default shall be declared under this Plan unless and until any payment due under this Plan has not have been made within thirty (30) days after written notice to the Reorganized Debtors and counsel for the Debtors.

        8.4    <u>Compliance with Plan</u>.  The Debtors may reinvest, use for capital improvements, reserve or distribute any cash flow in excess of what is required for current plan payments so long as there is no default under Plan.

9

**ARTICLE IX**

**Effects of Confirmation**

9.1    <u>Discharge of Claims; Injunction</u>.  Except as otherwise expressly provided in the Plan, the entry of the Confirmation order shall act to, among other things, permanently enjoin all Persons who have held, hold or may hold claims of or Interests in the Debtors as of the Confirmation Date (a) from commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest against the Debtors, (b) from the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtors or the Property of the Debtors with respect to any such Claim or Interest, (c) from creating, perfecting or enforcing any encumbrance of any kind against the Debtors thereof, or against the property of the Debtors with respect to any such Claim or Interest, (d) from creating, perfecting or enforcing any encumbrance of any kind against the Debtors thereof, or against the property of the Debtors with respect to any such Claim or Interest, and (e) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due from the Debtors thereof, or against the property of the Debtors, with respect to any such Claim or Interest. To the extent, however, that the Debtors default under the terms of the Plan and such default is not cured within ten (10) days after the Debtors and their counsel receive notice of the default, as provided for under Section 7.2 of the Plan, the injunction shall be void.

9.2    <u>Term of Injunctions or Stays</u>.  Unless otherwise provided, all injunctions or stays provided for in Chapter 11 cases pursuant to section 362(a) of the Bankruptcy Code or otherwise, shall remain in full force and effect until the Effective Date at which time the injunction under section VIII a shall be in force.

9.3    <u>Injunction against Interference with Plan</u>.  No entity may commence or continue any action or proceeding, or perform any act to interfere with the implementation and consummation of the Plan and the payments to be made hereunder.

**ARTICLE X**
**Cramdown Provisions and Confirmation Request**

10.1    In the event that sufficient votes to confirm said Plan are not received, the Debtors' requests confirmation of the Plan pursuant to the provision of Section 1129(b) of the Bankruptcy Code.

**ARTICLE XI**
**Modification of the Plan**

11.1    <u>Pre-Confirmation Modification</u>.  At any time before the Confirmation Date, the Plan may be modified by the Proponent upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of Section 1122 and 1123 of the Bankruptcy Code.  In the event that there is a modification of the Plan, then the Plan as modified, shall become the Plan.

11.2    <u>Post-Consummation Modification</u>.  At any time after the Confirmation Date of the Plan, but before substantial consummation of the Plan, the Plan may be modified by the

Proponent upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of Section 1122 and 1123 of the Bankruptcy Code. The Plan, as modified under these sections, becomes a Plan only if the Court, after notice and hearing, confirms such Plan, as modified, under Section 1129 of the Bankruptcy Code.

        11.3   <u>Non-Material Modifications</u>. At any time, the Proponent may, without the approval of the Court, so long as it does not materially or adversely effect the interest of Creditors, remedy any defect or omission, or reconcile any such inconsistencies in the Plan or in the Confirmation Order, as such matters may be necessary to carry out the purposes, intent and effect of this Plan.

## ARTICLE XII
## <u>Retention of Jurisdiction</u>

        12.1   The Court shall retain jurisdiction of the case after the Confirmation Date for the following purposes:

        (a)   to determine any and all objections in the allowance of claims and amendments to schedules;

        (b)   to classify the Claim of any Creditor and to re-examine Claims which have been allowed for purposes of voting, to determine such objections as may be filed to Claims;

        (c)   to determine any and all disputes arising under or in connection with the Plan, the sale of any of the Debtors' assets, collection or recovery of any assets;

        (d)   to determine any and all applications for allowance of compensation and reimbursement of expenses herein;

        (e)   to determine any and all pending applications for rejections of executory contracts and unexpired leases and the allowance of any claims resulting from the rejection thereof or from the rejection of executory contracts or unexpired leases pursuant to the Plan;

        (f)   to determine any and all applications, adversary proceedings and contested and litigated matters pending in the case as of, or after, the Confirmation Date;

        (g)   to determine any and all proceedings for recovery of payments pursuant to any Cause of Action;

        (h)   to modify any provision of the Plan to the full extent permitted by the Bankruptcy Code;

        (i)   to correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes, intent and effect of the Plan;

(j)      to determine such other matters which may be provided for in the Confirmation Order as may be authorized under the provisions of the Bankruptcy Code;

(k)      to enforce all provisions under the Plan;

(l)      to enter any order, including injunctions, necessary to enforce the terms of the Plan, the powers of the Debtors under the Bankruptcy Code, this Plan and as the Court may deem necessary.

## ARTICLE XIII
## Causes of Action

13.1     Litigation.  Except as otherwise provided in this Plan, the Debtors reserve the right to initiate or continue any litigation or adversary proceeding permitted under the Bankruptcy Code and applicable Federal Rules of Bankruptcy Procedure with respect to any Cause of Action.

13.2     Powers. The Debtors shall have the right to settle, compromise, sell, assign, terminate, release, discontinue or abandon any Cause of Action from time to time in its discretion.

## ARTICLE XIV
## Miscellaneous

14.1     Choice of Law.  Except to the extent superseded by the Bankruptcy Code or other federal law, the rights, duties and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the State of New Jersey, without regard to the choice of law rules thereof.

14.2     Payment of Statutory Fees.  All fees payable pursuant to section 1930 of Title 28 of the United States Code, as determined by the Court at the hearing pursuant to section 1128 of the Bankruptcy Code, will be paid on or before the Effective Date.  Moreover, all post-confirmation quarterly fees shall be paid by the Reorganized Debtor as and when they become due until the Bankruptcy Case is closed.

14.3     Discharge of the Debtors.  Except as otherwise provided in this Plan, the rights afforded in the Plan and the treatment of all Claims and Equity Interests in the Plan shall be in exchange for and in complete satisfaction, discharge, and release of Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors, any of their assets or properties and the Debtors' Estate.  Except as otherwise provided in this Plan (i) on the Effective Date, all Claims against the Debtors will be satisfied, discharged and released in full and (ii) all Persons shall be precluded from asserting against Debtors, their successors, or their assets or properties any other or further Claims or Equity Interests based upon any act or omission, transaction, or other activity of any kind or nature that occurred before the Confirmation Date.

Notwithstanding the forgoing, the discharge granted by 11 U.S.C. § 1141 (d) is modified as to the secured or priority tax debt provided for in this plan, and the discharge of any secured or priority tax debt under this plan shall not be effective until all secured or priority taxes provided for in the plan have been paid in full.

14.4    Discharge of Claims; Injunction.  Except as otherwise provided in this Plan, the rights afforded in this Plan and the payments and distributions to be made under the Plan shall be in complete exchange for, and in full satisfaction, discharge and release of, all existing debts and Claims of any kind, nature or description whatsoever against the Debtors, the estate or any of their Assets, and upon the Effective Date, all existing Claims against the Debtors, the estate and all of their assets and properties will be, and be deemed to be, exchanged, satisfied, discharged and released in full; and all holders of claims shall be precluded and enjoined from asserting against the Debtors, the Reorganized Debtors, their successors or their respective Assets or properties any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not the holder filed a proof of claim. It is acknowledged, however, that if the Debtors are in default under the terms of the Plan, and such default is not cured within ten (10) days after notice of the default is provided to the Debtors and their counsel in accordance with the notice provision under Section 7.2 of the Plan, the injunction will be void.

14.5    Effect of Confirmation Order.  Except as provided in Section 1141(d) of the Bankruptcy Code and as otherwise provided in the Plan, the provisions of the Plan and the Confirmation Order shall bind the Reorganized Debtor and all holders of claims or interests and will be a judicial determination of discharge of the Debtor from all debts that arose before the Confirmation Date and any liability on a Claim that is determined under Section 502 of the Bankruptcy Code as if such Claim had arisen before the Confirmation Date, whether or not a proof of claim based on any such date or liability is filed under Section 501 of the Bankruptcy Code and whether or not a Claim based on such debt or liability is allowed under Section 502 of the Bankruptcy Code and whether or not such holder is impaired under the Plan and whether or not such holder has accepted the Plan, and shall terminate all rights, claims and interests of such holder, except as provided in the Plan.

14.6    Severability.  Should any provision in this Plan be determined to be unenforceable, that determination will in no way limit or affect the enforceability and operative effect of any provision of the Plan.

14.7    Successors and Assigns. The rights and obligations of any person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of that Person.

14.8    Binding Effect.  The Plan will be binding upon and inure to the benefit of the Debtors, their Creditors, the holders of Equity Interests, and their respective successors and assigns.

14. 9    Withholding and Reporting Requirements.  In connection with the Plan and all instruments issued and distributions made pursuant to the Plan, the Debtors will comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing

16

authority and all distributions made pursuant to the Plan will be subject to any such withholding and reporting requirements.

       14.10    <u>Executory Contracts and Unexpired Leases.</u>    The Debtors assume the following executory contracts:

       1. All Leases with Tenants.

### ARTICLE XV
### Provisions for Resolving and Treating Claims

       15.1    <u>Objections</u>. Notwithstanding the occurrence of the Confirmation Date or the Effective Date, the Debtors may object to the allowance of any claim not previously allowed by final order whether or not a Proof of Claim has been filed and whether or not the Claim has been filed and whether or not the Claim has been scheduled as non-disputed, non-contingent and liquidated.

       15.2    <u>Prosecution of Objections</u>.  After the date of entry of the Confirmation Order, only the Debtors will have authority to file objections, litigate to judgment, settle or withdraw objections to Contested Claims.

       15.3    <u>No Distributions Pending Allowance</u>.  No payments or distributions will be made with respect to any Contested Claim except to the extent that the Contested Claim becomes an Allowed Claim.  If only a portion of a claim is disputed (and in the absence of a basis for set off or counterclaim), the distribution will be made on a pro rata basis on the uncontested portion of the claim, pending resolution of the portion which is disputed.

       15.4    <u>Distributions After Allowance</u>. Payments and distribution to each holder of a Contested Claim, to the extent that the Contested Claim becomes an Allowed Claim, will be made in accordance with the provisions of the Plan governing the Class of Claims to which the respective holder belongs as soon as practicable after the date that the order or judgment of the Court allowing the Claim becomes a Final Order.

Dated: January 3, 2011        **15-35 HEMPSTEAD PROPERTIES, LLC AND JACKSON 299 HEMPSTEAD, LLC**
        */s/ Steven Kates*
        Steven Kates

        **CIARDI CIARDI & ASTIN**

        *Albert A. Ciardi, III*
        Albert A. Ciardi, III, Esquire
        Jennifer E. Cranston, Esquire

17

Adrienne N. Roth, Esquire
One Commerce Square
2005 Market Street, Suite 1930
Philadelphia, PA  19103

Counsel to the Debtors and
Debtors-in-Possession