UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
*Caption in Compliance with D.N.J. LBR 9004-2(c)*

Ciardi Ciardi & Astin
Albert A. Ciardi, III, Esquire
Jennifer E. Cranston, Esquire
Adrienne N. Roth, Esquire
One Commerce Square
2005 Market Street, Suite 1930
Philadelphia, PA 19103
Telephone: (215) 557-3550
Facsimile: (215) 557-3551

| | |
|---|---|
| In Re:<br><br>15-35 Hempstead Properties, LLC, et. al.,<br>                                    Debtors. | CHAPTER 11<br><br>Case No.:  10-43178<br>Jointly Administered<br>With Case No.10-43180<br>Judge:  Gloria M. Burns |

**FIRST DISCLOSURE STATEMENT RELATED TO THE PLAN OF
REORGANIZATION PROPOSED BY 15-35 HEMPSTEAD PROPERTIES, LLC AND
JACKSON 299 HEMPSTEAD, LLC, THE DEBTORS AND DEBTORS -IN-POSSESSION**

Dated: April 25, 2011

**Albert A. Ciardi, III, Esquire
Jennifer E. Cranston, Esquire
Adrienne N. Roth, Esquire
CIARDI CIARDI & ASTIN
One Commerce Square
2005 Market Street, Suite 1930
Philadelphia, PA  19103
T: (215) 557-3550
F: (215)557-3551**

# TABLE OF CONTENTS

Page

I.    GENERAL BACKGROUND ...............................................................................4

      BRIEF EXPLANATION OF CHAPTER 11 ....................................................5

      DISCLAIMERS...................................................................................................5

      VOTING PROCEDURES ...................................................................................5
            A.    Persons Entitled to Vote on Plan ..................................................6
            B.    Hearing on Confirmation ..............................................................7
            C.    Acceptances Necessary to Confirm Plan .....................................7
            D.    Confirmation of Plan Without the Necessary Acceptances.......8

II.   FINANCIAL CONDITION OF DEBTORS ...........…..................................8
            A.    Projected Market Value of the Debtors. ......................................8

III.  SUMMARY OF PLAN OF REORGANIZATION ........................................10
            A.    Classes of Claims and Interest ....................................................10
            B.    Treatment of Classes of Claim ...................................................10
            C.    Administrative Claims .................................................................15
            D.    Treatment of Priority Tax Claims...............................................17
            E.    Provisions for Execution of the Plan .........................................18

IV.   PROJECTIONS AND FEASIBILITY ............................................................21

V.    COMPARISON OF LIQUIDATION VS. REORGANIZATION ...................21

VI.   TREATMENT OF EXECUTORY CONTRACTS ........................................22
            A.    Assumption .................................................................................22
            B.    Damages ......................................................................................23

VII.  EFFECT OF CONFIRMATION ....................................................................23
            A.    Injunction ...................................................................................23
            B.    Term of Injunctions or Stays ......................................................23
            C.    Injunction Against Interference with Plan ..................................24

VIII. CRAMDOWN PROVISIONS AND CONFIRMATION REQUEST .............24

IX.   MODIFICATION OF THE PLAN...................................................................24
            A.    Pre-Confirmation Modification ..................................................24
            B.    Pre-Consummation Modification ................................................24
            C.    Non-Material Modifications ........................................................25

X.    RETENTION OF JURISDICTION.................................................................25

XI.   CAUSES OF ACTION....................................................................................26

      A.     Powers.................................................................................26

      B.     Pending Causes of Action...................................................... 26

XII.  OBJECTIONS TO CLAIMS ...............................................................27

      A.     Objections to Claims.............................................................27

      B.     Contested Claims .................................................................27

XIII.  CHOICE OF LAW ............................................................................28

XIV.  EXCULPATION ...............................................................................28

XV.  MISCELLANEOUS ..........................................................................28

      A.     Payment of Statutory Fees .....................................................28

      B.     Discharge of Debtors .............................................................29

      C.     Discharge of Claims ..............................................................29

      D.     Effect of Confirmation Order .................................................30

      E.     Severability .........................................................................30

      F.     Successors and Assigns .........................................................30

      G.     Binding Effect......................................................................30

      H.     Governing Provisions ...........................................................30

      I.     Filing of Additional Documents .............................................30

      J.     Withholding and Reporting Requirements ...............................31

## I.    <u>GENERAL BACKGROUND</u>

Hempstead Properties, LLC (the "Hempstead Debtor") and Jackson 299 Hempstead, LLC (the "Jackson Debtor") the Debtors and Debtors-in-Possession (collectively the "Debtors") provide this Second Amended Disclosure Statement ("Disclosure Statement") to all of their known Creditors and "Interest Holders" entitled to same pursuant to section 1125 of title 11, as amended (the "Bankruptcy Code") in connection with the First Amended Plan of Reorganization (the "Plan") filed by the Debtors.  A copy of the Plan accompanies the Disclosure Statement. The purpose of this Disclosure Statement is to provide creditors of the Debtors with such information as may be deemed material, important and necessary in order to make a reasonably informed decision in exercising the right to vote on the Plan.  The capitalized items used in this Disclosure Statement, if not defined herein, shall have the same meaning as indicated in the Plan.

**NO REPRESENTATION CONCERNING THE DEBTORS-IN-POSSESSION (INCLUDING THOSE RELATING TO FUTURE OPERATIONS, THE VALUE OF ASSETS, ANY PROPERTY, OR CREDITORS AND OTHER CLAIMS) INCONSISTENT WITH ANYTHING CONTAINED HEREIN HAVE BEEN AUTHORIZED. ALL FINANCIAL INFORMATION IS BASED UPON THE DEBTORS' REPRESENTATIONS.**

On October 26, 2010, the Debtors filed separate voluntary petitions for reorganization pursuant to Chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey.  Upon the filing of their petitions, the Debtors automatically became debtors-in-possession and since that time has conducted its business in that capacity.

4

## BRIEF EXPLANATION OF CHAPTER 11

Chapter 11 is the principal business reorganization section of the United States Bankruptcy Code. Pursuant to Chapter 11, a Debtor is permitted to reorganize its business affairs for its own benefit and that of its creditors and other interest holders.

The objective of a Chapter 11 case is the formulation of a plan of reorganization of the Debtor and its affairs. Creditors are given an opportunity to vote on any proposed plan, and the plan must be confirmed by the Bankruptcy Court to be valid and binding on all parties. Once the plan is confirmed, all claims against the Debtor which arose before the Chapter 11 proceeding was initiated are extinguished, unless specifically preserved in the Plan.

## DISCLAIMERS

THIS DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF THE STATEMENT AND REPRESENTATIONS CONTAINED HEREIN ARE MADE SOLELY BY OR AT THE INSTANCE OF PLAN PROPONENTS.

CERTAIN OF THE INFORMATION PROVIDED, BY ITS NATURE, IS FORWARD LOOKING, CONTAINS ESTIMATES AND ASSUMPTIONS WHICH MAY PROVE TO BE FALSE OR INACCURATE AND CONTAINS PROJECTIONS WHICH MAY BE MATERIALLY DIFFERENT FORM ACTUAL FUTURE EXPERIENCES. SUCH ESTIMATES AND ASSUMPTIONS ARE MADE FOR INFORMATIONAL PURPOSES ONLY.

## VOTING PROCEDURE

The United States Bankruptcy Court has reviewed this Disclosure Statement and entered an Order determining that this document contains "adequate information" such that creditors can meaningfully evaluate the Plan. A copy of the Bankruptcy Court Order approving the Disclosure Statement is included in this package. Only after creditors have had an opportunity to vote on

the Plan will the Court consider the Plan and determine whether it should be approved or confirmed.

All creditors entitled to vote on the Plan may cast their votes for or against the Plan by completing, dating, signing and causing the Ballot Form accompanying this Disclosure Statement to be returned to the following address in the enclosed envelope:

Albert A. Ciardi, III, Esquire
Jennifer E. Cranston, Esquire
Adrienne N. Roth, Esquire
Ciardi Ciardi & Astin
One Commerce Square, Suite 1930
2005 Market Street
Philadelphia, PA 19103

BALLOTS MUST BE RECEIVED ON OR BEFORE 5:00 P.M. ON _____, 2011 TO BE COUNTED IN THE VOTING.  BALLOTS RECEIVED AFTER THIS TIME WILL NOT BE COUNTED IN THE VOTING UNLESS THE COURT SO ORDERS.

THE DEBTORS RECOMMEND A VOTE "FOR ACCEPTANCE" OF THE PLAN.

This Disclosure Statement has been approved by the Bankruptcy Court in accordance with Section 1125 of the Bankruptcy Code and is provided to all of the known holders of Claims against the Debtors whose Claims are impaired under the Plan and to each Interest holder of record.  The Disclosure Statement is intended to assist creditors in evaluating the Plan and in determining whether to accept the Plan.  Under the Bankruptcy Code, your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement prior to or concurrently with such solicitation.

A.      **Persons Entitled to Vote on Plan**

Only the votes of classes of claimants and interest holders which are impaired by the Plan are counted in connection with confirmation of the Plan. Generally, and subject to the specific

6

provisions of Section 1124 of the Bankruptcy Code, this includes creditors who, under the Plan, will receive less than payment in full of their claims. However, even though Class 5 claimants are projected to receive 100%, the class is impaired and will have the right to vote under the Plan.

In determining the acceptance of the Plan, a vote will only be counted if submitted by a creditor whose claim is duly scheduled by the Debtors as undisputed, non-contingent and unliquidated, or who has timely filed with the Court a proof of claim which has not been objected to or disallowed prior to computation of the votes on the Plan. The Ballot Form does not constitute a proof of claim. If you are in any way uncertain if your Claim has been correctly scheduled, you may check the Debtors' Schedules which are on file in the Bankruptcy Court, but it is suggested that you file a Proof of Claim. The Clerk of the Bankruptcy Court will not provide this information by telephone.

### B.    Hearing on Confirmation

The Bankruptcy Court will set a hearing to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied. Each creditor will receive, either with this Disclosure Statement or separately, the Bankruptcy Court's Notice of Hearing on Confirmation of the Plan.

### C.    Acceptances Necessary to Confirm Plan

At the scheduled confirmation hearing, the Bankruptcy Court must determine, among other things, whether the Plan has been accepted by each impaired class. Under Section 1126 of the Bankruptcy Code, an impaired class is deemed to have accepted the Plan if at least 2/3 in amount and more than 1/2 in number of the Allowed Claims of class members who have voted to accept or reject the Plan have voted for acceptance of the Plan. Further, unless there is

7

acceptance of the Plan by all members of an impaired class, the Bankruptcy Court must also determine that under the Plan class members will receive property of a value, as of the Effective Date of the Plan, that is not less than the amount that such class members would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date of the Plan.

### D.    Confirmation of the Plan Without the Necessary Acceptances

The Plan may be confirmed even if it is not accepted by one or all of the impaired classes if the Bankruptcy Court finds that the Plan does not discriminate unfairly against and is fair and equitable as to such class or classes.   This provision is set forth in Section 1129 (b) of the Bankruptcy Code and requires that, among other things, the claimants must either receive the full value of their claims or, if they receive less, no class with junior liquidation priority may receive anything.  To satisfy this Section, as it applies to unsecured creditors, if that class has rejected the Plan, the Plan must propose to pay the class their allowed claims in full, or no junior class may retain its equity interest. Courts have called this requirement the Absolute Priority Rule. An exception has developed to the Absolute Priority Rule. That exception would allow a class, junior to the unsecured class, to retain or receive equity if that junior class infuses new money into the Debtors which is necessary to the reorganization and the new money has a value similar to the value being retained. In order to determine the market value of the retained equity and whether then new money is equal to it, the Debtors will value the company as a going concern at this Confirmation Hearing.

## II.    FINANCIAL CONDITION OF DEBTORS

### A.    Projected Market Value of the Debtors

The assets of the Debtors are the following:

Assets

| | |
|---|---|
| Real Property located at 101 Boardwalk, Atlantic City, NJ | $38,000,000.00 |
| Personal Property | $82,102.21 |
| Total Assets | $38,082,102.21 |

The assets listed above are based upon the amounts shown in the Projected Market Value Analysis prior to any discounts on liquidation or costs of liquidation. These are different from the amounts on the Summary of Assets and Liabilities in the Debtors' Schedules which reflected the book value. The numbers set forth above have been not discounted by the Debtors to adjust for what the Debtors would realize from an actual sale of the assets if sold at auction. Those discounts are addressed in the Projected Market Value Analysis. The Debtors direct the reader to the Projected Market Analysis for a more complete analysis. The Projected Market Analysis is attached hereto and incorporated herein as Exhibit "A" and solely represents the Debtors' estimate of the results of liquidation. The liabilities of Debtors are as follows:

| | |
|---|---|
| Secured Debt | |
| NYCB[1] | $18,748,710.81 |
| Singer | $98,000.00 |
| Tax Claims | |
| Atlantic City Water Lien | $75,000.00 |
| Wage Taxes | $10,000.00 |
| Unsecured Debt | |
| Unsecured Non-priority Claims | $6,220,804.22 |
| Total Liabilities | $25,152,515.03 |

All liabilities are taken from the filed proofs of claim or the Schedules and have been adjusted to reflect Debtors' belief.

---

[1] The Secured Claim of NYCB may increase with the addition of post-petition interest and fees.

### III.    SUMMARY OF PLAN OF REORGANIZATION

The following is a brief summary of the Plan and is qualified in its entirety by the full text of the Plan itself.  The Plan, if confirmed, will be binding upon the Debtors, their creditors and shareholders.  All creditors are urged to carefully read the Plan.

### A.    Classes of Claims and Interest

The Plan divides Claims and Interests into various separate classes.  Under the Plan, there are five separate classes of creditors (classes 1 through 5).

### B.    Treatment of Classes of Claim

1.    **Class 1.**      **Priority Tax Claims**.  Class 1 is not impaired.  Except as otherwise provided herein, the treatment and consideration to be received by Class 1 shall be in full settlement, satisfaction, release and discharge of its respective claims and liens.

Class 1 Priority Claims shall receive one hundred (100%) percent of their claim on the Effective Date.  The Hempstead Debtor owes $10,000 in wage taxes and penalties.

2.    **Class 2.**      **Secured Claims of New York Community Bank**  Class 2 consists of the claim of NYCB.  NYCB is secured by a first mortgage on the multi-family property located at 101 Boardwalk, Atlantic City, New Jersey 08401.

A.    NYCB is a secured creditor in the amount of $18,748,710.81, exclusive of interest, professional fees and expenses since the Petition Date.  The claim arises out of two separate loans made on or about February 16, 2007 by NYCB to the Debtor, 15-35 Hempstead Properties, LLC, and Jackson 299 Hempstead, LLC (the "Jackson Debtor") who bankruptcy is jointly administered with the Debtor's.  The loans to the Debtor and Jackson Debtor were in the original principal amount of $16,760,000 and $500,000, secured by a first mortgage on the multi-

family property located at 101 Boardwalk, Atlantic City, New Jersey 08401 and evidenced by two separate mortgages, notes and security agreements.

Additionally, NYCB asserted a first lien and security interest in among other things and without any limitations, all fixtures, fittings, appliances, equipment, machinery, furnishings, furniture and articles of personal property of every kind then owned or later acquired by the Debtor, as well as all proceeds and products of same.   The Debtor has also executed and delivered an Assignment of Leases and Rents to the Bank that was recorded in the Atlantic County Clerk's office on February 23, 2007.  While NYCB objects to the Debtors' continued use of rents under *In re Jason Realty* 59 F.3d 423 (3rd Cir. 1995), the Debtors and NYCB have resolved the objection with the entering of the Consent Order on April 13, 2011.  NYCB shall have the right to reinstate its objection should the Debtors default under the Consent Order. NYCB has taken the position that the Debtors are in default under the Consent Order. If the Court agrees, NYCB's foreclosure action against the Property, and/or an auction sale of the Property, will occur, in which case the distribution to other clases in the Plan, especially Class 5, may be significantly impacted.  NYCB shall receive the following treatment:

(i)      Class 2 shall receive the Release Prices set forth in Subsection B, to be applied first to current interest at the default contract rate and then to principal.  Once the initial Sales Requirement is satisfied, the Debtor shall be required to close another sixty units by September 30, 2012 and each year thereafter until all plan payments have been made.

B.      <u>Release Prices</u>:

(i)      For each condominium unit sold, the Debtor shall pay release price to the Bank of the greater of $130/sq. foot or seventy-five percent (75%) of gross proceeds. The

11

balance of the net proceeds shall be applied to interest payments up to a 3 month reserve, with any remaining funds reserved for improvements; and

       (ii)      The Debtors shall have the right to pre-pay the outstanding loan balance at any time during the floating rate or fixed rate period without penalty.

       (iii)     Recording the Master Deed.  Once the Debtor has obtained sixty signed Agreements of Sale and generate at least six million dollars proceeds to NYCB in accordance with the Consent Order and sales requirements set forth in 4.2C, the Debtors may record the Master Deed to the Condominium and commence closing on units.

       C.     <u>Sales Requirements</u>.  The Debtors shall deliver agreements of sale which are approved by July 30, 2011 for closing on or before September 30, 2011 which shall be at least sixty (60) units and generate at least six million dollars of proceeds to NYCB.  The Debtors may increase release prices to achieve the net proceeds requirement so long as the unit requirement is met.  An approved agreement of shall be one which is:

       i.      All cash with evidence of liquid funds for purchase verifiable to NYCB; or

       ii.      Have a commitment from a mortgage lender with a scheduled closing date and no contingencies for inspection, due diligence, financing or appraisal remain outstanding; and

       iii.     A down payment of 5% or, in the case of buyers purchasing through government programs, the lowest down payment allowed under those programs.

If the Sales Requirement is met by the Debtors, the Debtors shall continue to sell condominium units in the ordinary course of business.  If the Sales Requirement set forth above

is not achieved by July 30, 2011, the property shall be sold at an auction pursuant to procedures set forth in Section 6.9 of the Plan on or before September 30, 2011. All such sales, including an auction, shall be pursuant to the Plan and subject to the exemption under Section 1146(a).

Whether converted to a bankruptcy under Chapter 7 or under a confirmed plan, NYCB agrees to fund approved professional fees as a carve-out from any auction sale or credit bid. In the event of an auction sale or credit bid under a confirmed plan or if converted to a bankruptcy under Chapter 7, NYCB shall provide a carve-out to unsecured creditors of (i) fifty thousand dollars ($50,000), (ii) estate claims under chapter 5 of the bankruptcy code and (iii) real estate tax refunds, whether received as a payment by the taxing authority or as a credit against future tax obligations (in which event the unsecured creditors shall be paid by the property owner to the extent of the amount of the credit) (the "Unsecured Carve-Out") and NYCB agrees to that the first $50,000 of said Unsecured Carve-Out shall be reserved for the exclusive payment to holders of allowed unsecured claims other than any such claim held by NYCB.

3.    **Class 3.**    **Secured Claim of Singer Financial Corporation.** Class 3 consists of the claim of Singer. Singer is secured to the extent of the value of the collateral over what is owed to NYCB, and unsecured to the extent of the balance of the claim. The value of the collateral will be valued "as is" on the Confirmation Date, not as a projection of total sales proceeds to be received over time. Singer is secured by a second mortgage on the multi-family property located at 101 Boardwalk, Atlantic City, New Jersey 08401.

A.    Singer is a secured creditor in the amount of $98,000.00. Singer shall receive the following treatment.

(i)    The existing claim of Singer shall be paid as follows:

13

(a)    Debtors shall make interest only payments for twelve months following the Effective Date.  The rate shall be the non-default rate in effect on the Effective Date.

(b)    Commencing with the payment due on the thirteenth month following the Effective Date, the Debtors shall make a monthly payment of principal and interest using a twenty-five year amortization schedule.  The interest rate shall be the non-default interest rate.

The Debtors shall have the right to pre-pay the outstanding loan balance at any time during the floating rate or fixed rate period without penalty.  Singer shall permit a distribution of excess cash only after achieving minimum debt service coverage of 120% for a minimum of twelve (12) consecutive months.

4.    **Class 4**    __Secured Claim of Municipal Authorities__.  Class 4 is impaired.  The treatment and consideration to be received by the holder of Class 4 Allowed Claims shall be in full settlement, satisfaction, release and discharge of their respective Claims and Liens.  The currently disputed delinquent tax balance of approximately $75,000 and will be paid in equal quarterly installments over 60 months, including accrued interest of 6.00%.  The Debtors will commence making installment payments to the City at the time of filing this Plan.

5.    **Class 5.**    __Unsecured Claim.__  Class 5 is impaired.  Except as otherwise provided herein, the treatment and consideration to be received by Class 5 shall be in full settlement, satisfaction, release and discharge of its respective claims and liens against the Debtors.  Class 5 shall receive a distribution of one hundred percent (100%) once all secured creditors, administrative claims and other priority creditors have been paid in full.  The Class 5 creditors shall receive a pro-rata distribution semi-annually of seventy-five percent (75%) of net

14

sale proceeds, after the secured and priority claims are paid, until Class 5 receives one hundred

percent (100%).  Attached hereto as Exhibit "B" are the Debtors' five-year projections.  The

above payout is contingent upon the selling-out of the Debtors' condominium units as the

Debtors' project.

In the event of an auction sale or credit bid under a confirmed plan or if converted

to a bankruptcy under Chapter 7, the Class 5 claims will be impaired and NYCB shall provide a

carve-out to unsecured creditors of (i) fifty thousand dollars ($50,000), (ii) estate claims under

chapter 5 of the bankruptcy code and (iii) real estate tax refunds, whether received as a payment

by the taxing authority or as a credit against future tax obligations (in which event the unsecured

creditors shall be paid by the property owner to the extent of the amount of the credit) (the

"Unsecured Carve-Out") and NYCB agrees to that the first $50,000 of said Unsecured Carve-

Out shall be reserved for the exclusive payment to holders of allowed unsecured claims other

than any such claim held by NYCB.

6.     **Class 6.**        **Interest Holders.**  All current interests, equity or common

stock shall be retained by existing equity.

C.     **Administrative Claims.**  All Administrative Claims shall be treated as follows:

1.     Time for Filing Administrative Claims.  The holder of an Administrative

Claim, other than (i) a Fee Claim or (ii) a liability incurred and paid in the ordinary course of

business by the Debtors, must file with the Bankruptcy Court and serve on the Debtors and their

counsel, notice of such Administrative Claim within thirty (30) days after the Confirmation Date.

Such notice must include at a minimum (i) the name of the holder of the claim, (ii) the amount of

the claim, and (iii) the basis of the claim.  Failure to file this notice timely and properly shall

result in the Administrative Claim being forever barred and discharged. However, any claim which has been previously established by order of this Court, need not be noticed further.

2.    Time for Filing Fee Claims. Each professional person who holds or asserts an Administrative Claim that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court a fee application within thirty (30) days after the Effective Date. Failure to file the fee application timely shall result in the Fee Claim being forever barred and discharged.

3.    Allowance of Administrative Claims. An Administrative Claim with respect to which notice is required and has been properly filed pursuant to Section 4.1(a) this Plan shall become an Allowed Administrative Claim if no objection is filed within thirty (30) days of the filing and service of notice of such Administrative Claim. If an objection is filed within such thirty (30) day period, the Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by Final Order. An Administrative Claim that is a Fee Claim, and with respect to its fee application having been properly filed pursuant to Section 4.1(b) of the Plan, shall become an Allowed Administrative Claim only to the extent allowed by Final Order. Allowed Fee Claims shall be paid on the Effective Date or immediately upon entry of an order approving said fees.

4.    Payment of Allowed Administrative Claim. Each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim upon the Effective Date, (ii) such other treatment as may be agreed upon in writing by the Debtors and such holder as long as no payment is made thereon prior to the Effective Date, or (iii) payment in the manner and at such time (including prior to the Effective Date) as may otherwise have been or in the future may be ordered by the Court, or (iv) if arising in the ordinary course such

Administrative Claim may be paid in the ordinary course of business by the Debtors, unless otherwise required by an Order of the Court.

The Debtors believe there are post-petition administrative claims in the approximate amount of $200,000. As condominium units are sold and rent is collected, the Debtors will continue to pay down these claims.

Whether converted to a bankruptcy under Chapter 7 or under a confirmed plan, NYCB agrees to fund approved professional fees as a carve-out from any auction sale or credit bid within the confines of the Consent Order.

5.     <u>Professional Fees Incurred After the Effective Date</u>.  Any professional fees incurred by the Debtor after the Effective Date must be approved by the Debtors and, thereafter, paid.  Any dispute which may arise with regard to professional fees after the Effective Date shall be submitted to the Bankruptcy Court, which shall retain jurisdiction to settle these types of disputes.  In the event of such dispute, the Debtors shall promptly pay that portion of the fees, if any, which is not in dispute.

6.     <u>Committee Existence.</u>  The Committee shall cease existence as of the Effective Date.  All fees of the Distribution Trustee or counsel to the Distribution Trustee shall be paid from the funds in the Distribution Trust.

**D.     <u>Treatment of Priority Tax Claims.</u>** Each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Debtor (i) the amount of such holder's Allowed Claim on the Effective Date; (ii) the amount of such holder's Allowed Claim, plus interest accrued at the applicable statutory rate, in equal monthly cash payments in accordance with the provisions of Subsection 1129(a)(9)(c) of the Bankruptcy Code commencing on the Effective

Date or (iii) such other treatment as may be agreed upon in writing by the Debtors and such

Creditor.

**E.    Provisions for Execution of the Plan.**

1.    Continued Rentals.    The Debtors are currently receiving

approximately $155,000 per month in rental payments.  The Debtors will fund the plan and pay

their creditors with the funds generated from rental income and the sale of condo units.

2.    Condominium Declaration.    With the conversion of rental units into

condominiums, the Debtors will supply the purchaser with the Condominium Declaration.  The

Declaration includes a description of the property, the condominium form of ownership, and

rules and regulations for the Condominium Association.  Specifically, the Condominium consists

of 1.5 acres, one (1) building with eleven (11) levels, 359 residential units and four (4)

commercial units, together with all appurtenant site improvements and includes all right,

privileges, roads, waters and appurtenances thereto belonging or appertaining.

3.    Auction.    If the Sales Requirements set forth in 4.2C of the Plan and the

Consent Order are not met by July 30, 2011, the Debtors will sell the Property at auction to the

highest and best offer.  NYCB shall be entitled to credit bid if an auction takes place.  In the

event of a credit bid, NYCB shall carve out proceeds to pay all administrative claims in full.  If

there is no credit bid, NYCB agrees to carve out from proceeds funds sufficient to pay all costs

of administration.

The Debtors have hired The Landis Company as broker to sell the remaining

condominium units.  To date, there have been several hundred showings. The Debtors have run

additional advertisements  in the Atlantic City Weekly, the May issue of Home and Land Real

Estate Book, the May Issue of the Real Estate Book, the Union 54 newsletter and is enrolled in a broker referral program for the tri-state area.

4.  <u>Execution of Documents</u>.  Prior to the Effective Date, the Debtors are authorized and directed to execute and deliver all documents and to take and to cause to be taken all action necessary or appropriate to execute and implement the provisions of this Plan.

5.  <u>Alterations, Amendments or Modifications</u>.  This Plan may be altered, amended, or modified by the written agreement of Proponents before or after the Confirmation Date, as provided in Section 1127 of the Bankruptcy Code.

6.  <u>Final Decree</u>.  Upon satisfaction of the Claims against and interests in the Debtors as provided in this Plan, the Case shall be closed.  Nothing herein shall prevent the Debtors from completing or instituting such proceedings as may be necessary for the enforcement of any claim of the Debtors which may have existed against any third party before or which may exist after Confirmation which may have not been enforced or prosecuted prior to Confirmation.

7.  <u>Corporate Charter</u>.  The Debtors' corporate charter will be amended after the Effective Date to any extent necessary to permit the Debtor to implement the terms of this Plan.

8.  <u>Retention and Enforcement of Claims</u>.  The Debtors shall retain any and all claims of the Debtors on behalf of, and as a representative of, the Debtors or their estates, including without limitation, all claims arising or assertable at any time under the Bankruptcy Code, including under Sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 552 and 553 thereof.  In the Event of the Alternate Reorganization, all claims will be transferred to the Liquidation Trust.

9.   <u>Alternative Reorganization</u>. In the event of an auction sale or credit bid, a Liquidating Trust will be established by the Liquidating Estate over which the Committee will have the right to designate a Liquidating Trustee to distribute the funds received from the auction sale or credit bid.   Additionally, the Committee will have the option to appoint an Oversight Committee to interface with the Liquidating Trustee.   The Liquidating Estate is not obligated to pay the Debtors' Post-Effective Date professional fees if the Sales Requirement is not met.

10.   <u>Substantive Consolidation of Debtors.</u> Confirmation of this Plan shall effect a substantive consolidation of the Debtors. The Debtors share secured Claims of NYCB and the Singer. The Debtors aver that the common business purpose, common secured creditors and lack of prejudice to any creditor will permit the substantive consolidation. Accordingly, as of the Effective Date: (a) all assets (and proceeds thereof) and liabilities of the Debtors shall be deemed merged and treated as though they were merged into the Reorganized Debtor; (b) no distributions shall be made under the Plan on account of any intercompany Claims (i.e. between and among each Debtor) and all such intercompany Claims shall be eliminated; (c) all Claims against any Debtor for which one or more of the Debtors is also liable, whether such liability is joint, several or joint and several, and whether it is primary or secondary, will be merged into a single Claim against the consolidated Reorganized Debtor; and (d) each and every Claim filed or to be filed in any of the Cases shall be deemed filed against the consolidated Reorganized Debtor, and shall be deemed one Claim against the Consolidated Reorganized Debtor.   Such substantive consolidation shall not (other than for purposes of effectuating the terms of this Plan) affect the legal and corporate structures of the Debtors.   Notwithstanding the substantive consolidation provided for herein, each and every Debtor shall remain responsible for the

payment of quarterly fees pursuant to 28 U.S.C. § 1930 to the Office of the United States Trustee

until such time as a particular Case pertaining to such Debtor is closed, dismissed or converted.

Unless the Bankruptcy Court has ordered the substantive consolidation of the Debtors'

estates before the Confirmation Hearing, the Plan will serve as, and will be deemed to be, a

motion for entry of an order substantively consolidating the Debtors' estates.  If no objection to

substantive consolidation is timely filed and served by the date as may be established by the

Bankruptcy Court, an order approving substantive consolidation (which may be the Confirmation

Order) may be entered by the Bankruptcy Court.  If any such objections are timely filed and

served, a hearing with respect to substantive consolidation of the Cases and the objections

thereto will be scheduled by the Bankruptcy Court, which hearing may, but is not required to,

coincide with the Confirmation Hearing.

## IV.  PROJECTIONS AND FEASIBILITY

Attached hereto and made a part hereof as Exhibit "B" are the Debtors' projections for a

five (5) year period.

The Debtors believe that the projections are reasonable and have incorporated

conservative assumptions into them, but no assurance can be given that the results shown will be

realized.  The Debtors also believe that the enclosed projections indicate that the proposed plan

of reorganization is feasible.

## V.  COMPARISON OF PROJECTED MARKET VALUE VS. REORGANIZATION

As a condition to confirmation of the Plan, Section 1129(a)(7)(A)(ii) of the Bankruptcy

Code requires that each impaired class of claims or interests must receive or retain at least the

amount or value it would receive if the Debtors would liquidate under a Chapter 7 scenario on

the Effective Date of the Plan.  The liquidation analysis assumes a Chapter 7 scenario in which a

trustee appointed by the Bankruptcy Court would liquidate the assets of the Debtors' estates. The liquidation analysis is based upon estimates and assumptions that, although developed and considered reasonable by the Debtors, are inherently subject to significant economic and competitive uncertainties and contingencies beyond the control of the Debtors. The liquidation analysis is also based upon assumptions with regard to liquidation decisions that are subject to change. Accordingly, there can be no assurance that the values reflected in the liquidation analysis would be realized if the Debtors were, in fact, to undergo such a liquidation.

A Chapter 7 liquidation would result in a substantial diminution in the value to be realized by holders of claims because of (i) the failure to realize the greater going concern value of the Debtors' business, (ii) additional administrative expenses involved in the appointment of a trustee, attorneys, accountants and other professionals to assist such trustee and (iii) additional expenses and claims, some of which would be entitled to priority and payment, which would arrive by reason of the liquidation. In addition, it should be noted that the analysis does not reduce the value of liquidation recoveries on account of a substantial time that likely would elapse before creditors would receive any distribution in respect to their claims in a liquidation scenario. Consequently, the Debtors believe that the Plan which provides for the sale of the Debtors' assets, provides a substantially greater return to holders of claims than would a liquidation. Under the Plan, administrative claims and secured creditors holding valid liens may be paid in full.

VI.   **TREATMENT OF EXECUTORY CONTRACTS**

A.   **Assumption/Rejection**.

As of the Effective Date, the Debtor will assume all executory contracts, leases, licenses and management agreements (collectively, the "Contracts").

22

B. **Damages**.

Any Claim for damages arising by reason of the rejection of any Contract will constitute a Rejection Claim, if, but only if, a proof of claim therefore shall be filed with the Clerk of the Court within thirty (30) days after the date of rejection.  If a Rejection Claim becomes an Allowed Claim then it shall constitute a general unsecured claim under Class 5.

## VII. EFFECTS OF CONFIRMATION

A. **Injunction**

Except as otherwise expressly provided in the Plan, the entry of the Confirmation order shall act to, among other things, permanently enjoin all Persons who have held, hold or may hold Claims of or Interests in the Debtors after the Confirmation Date (a) from commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest against the Debtors (b) from the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtors or the Property of the Debtors with respect to any such Claim or Interest, (c) from creating, perfecting or enforcing any encumbrance of any kind against the Debtors thereof, or against the property of the Debtors with respect to any such Claim or Interest, (c) from creating, perfecting or enforcing any encumbrance of any kind against the Debtors thereof, or against the property of the Debtors with respect to any such Claim or Interest, (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due from the Debtors thereof, or against the property of the Debtors, with respect to any such Claim or Interest.

B. **Term of Injunctions or Stays**.

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to Sections 105 or 362 of the Code or otherwise and extant on the Confirmation Date shall remain in full force and effect until the date on which the Debtors are dissolved.

**C.      Injunction Against Interference With Plan.**

No entity may commence or continue any action or proceeding, or perform any act to interfere with the implementation and consummation of the Plan and the payments to be made hereunder.

**VIII.   CRAMDOWN PROVISIONS AND CONFIRMATION REQUEST**

In the event that sufficient votes to confirm said Plan are not received, the Debtors and the Committee request confirmation of the Plan pursuant to the provisions to the provisions of Section 1129 (b) of the Bankruptcy Code.

**IX.    MODIFICATION OF THE PLAN**

**A.      Pre-Confirmation Modification.**  At any time before the Confirmation Date, the Plan may be modified by the written agreement of both Proponents and upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of Section 1122 and 1123 of the Bankruptcy Code.  In the event that there is a modification of the Plan, then the Plan as modified, shall become the Plan.

**B.      Pre-Consummation Modification.**  At any time after the Confirmation Date of the Plan, but before substantial consummation of the Plan, the Plan may be modified by the Proponents and upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of Section 1122 and 1123 of the Bankruptcy Code.  The Plan, as modified under this section, becomes a Plan only if the Court, after notice and hearing, confirms such Plan, as modified, under Section 1129 of the Bankruptcy Code.

**C.**    **Non-Material Modifications.**    At any time, the Proponents may, without the approval of the Court so long as it does not materially or adversely effect the interest of Creditors, remedy any defect or omission, or reconcile any such inconsistencies in the Plan or in the Confirmation Order, as such matters may be necessary to carry out the purposes, intent and effect of this Plan.

## X.    RETENTION OF JURISDICTION

The Court shall retain jurisdiction of the case after the Confirmation Date for the following purposes:

A.    to determine any and all objections in the allowance of claims and amendments to schedules;

B.    to classify the Claim of any Creditor and to re-examine Claims which have been allowed for purposes of voting, to determine such objections as may be filed to Claims;

C.    to determine any and all disputes arising under or in connection with the Plan, the sale of any of the Debtors' assets, collection or recovery of any assets;

D.    to determine any and all applications for allowance of compensation and reimbursement of expenses herein;

E.    to determine any and all pending applications for rejections of executory contracts and unexpired leases and the allowance of any claims resulting from the rejection thereof or from the rejection of executory contracts or unexpired leases pursuant to the Plan;

F.    to determine any and all applications, adversary proceedings and contested and litigated matters pending in the case as of, or after, the Confirmation Date;

G.    to determine any and all proceedings for recovery of payments pursuant to any Cause of Action;

25

H.      to modify any provision of the Plan to the full extent permitted by the Bankruptcy Code;

I.      to correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes, intent and effect of the Plan;

J.      to determine such other matters which may be provided for in the Confirmation Order as may be authorized under the provisions of the Bankruptcy Code;

K.      to enforce all provisions under the Plan;

L.      to enter any order, including injunctions, necessary to enforce the terms of the Plan, the powers of the Debtors under the Bankruptcy Code, this Plan and as the Court may deem necessary.

## XI.   CAUSES OF ACTION

A.      **Powers**.  The Debtors, as set forth in Sections 5.5 and 5.7, shall have the right to settle, compromise, sell, assign, terminate, release, discontinue or abandon any Cause of Action, without notice to creditors or Court approval from time to time in their discretion.

B.      **Pending Causes of Action**.

i.      **Tax Appeals**.  The Debtors have filed a Notice of Removal for the tax appeals pending in the Tax Court of New Jersey, against The City of Atlantic City, Case Nos.: 008041-2009, 005285-2010 and _____-2011 (the "Tax Appeals"). [D.I. 172]  The Tax Appeals are based off of real estate taxes allegedly owed by the Debtors to the City of Atlantic City.  The Debtors anticipate that the total reduction in tax liability will be _____.  All funds awarded to the Debtors from the Tax Appeals will be paid to the general unsecured creditors in a pro-rata distribution within ninety (90) days of determination of said Tax Appeals.

   ii. <u>Atlantic City Electric</u>.  If the Debtors and Atlantic City Electric cannot resolve their dispute, the Debtors intend to initiate a claim against Atlantic City Electric for the December, 2010 electric bill which jumped by more than $10,000. The Debtors believe there was a broken electric line that caused a power surge and $28,800 in damages to the Debtors' fire panel, elevator driver and electric motors in the boiler room, along with a spike in the demand meter.  Total damages claimed by the Debtors will be around $40,000 for compensatory damages alone.  The Debtors may seek additional damages if the power surge causes a delay in condominium sales.  Additionally, the Debtors are in the process of resolving the dispute with Atlantic City Electric regarding prepetition code violations.

## XII. <u>OBJECTIONS TO CLAIMS</u>

### A. <u>Objection to Claims</u>

   Notwithstanding the occurrence of the Confirmation Date or the Effective Date, the Debtors may object to the allowance of any claim not previously allowed by final order whether or not a Proof of Claim has been filed and whether or not the Claim has been filed and whether or not the Claim has been scheduled as non-disputed, non-contingent and liquidated.

### B. <u>Contested Claims</u>

   Notwithstanding any other provision of this Plan, a Contested Claim will be paid only after allowance by the Court or upon stipulation of the Debtors and the claimant involved, as approved by the Court.  If allowed, the Contested Claim will become an Allowed Claim and shall be paid on the same terms as if there had been no dispute.  The need for resolution of Contested Claims will not delay other payments under the Plan.  No distribution shall be made to a Contested Claim until it is Allowed.

### XIII.   CHOICE OF LAW

Except to the extent superseded by the Bankruptcy Code or other federal law, the rights, duties and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the State of New Jersey, without regard to the choice of law rules thereof.

### XIV.   EXCULPATION

Following the Effective Date, neither the Debtors, any of their officers, directors, employees or agents, the Creditors' Committee and the members thereof, nor any professional persons employed by any of the foregoing parties, shall have or incur any liability or obligation to any entity for any action taken at any time or omitted to be taken at any time in connection with or related to the formation, preparation, dissemination, implementation, confirmation or consummation of the Plan, the Disclosure Statement or any agreement or document created or entered into, or any action taken or omitted to be taken in connection with the Plan or this Chapter 11 case;  provided, however, that the provisions of this article shall have no effect on the liability of any entity that would otherwise result from action or omission to the extent that such action or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

### XV.   MISCELLANEOUS

#### A.    Payment of Statutory Fees

All fees payable pursuant to section 1930 of Title 28 of the United States Code, as determined by the Court at the hearing pursuant to section 1128 of the Bankruptcy Code, will be paid on or before the Effective Date.  The Debtors will pay all post-confirmation fees as required by the Bankruptcy Code.

28

### B.    Discharge of Debtors

The rights afforded in the Plan and the treatment of all Claims and Equity Interests in the Plan shall be in exchange for and in complete satisfaction, discharge, and release of Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors, any of their assets or properties and the Debtors' Estates.  Except as otherwise provided in this Plan (i) on the Effective Date, all Claims against and Equity Interests in the Debtors will be satisfied, discharged and released in full and (ii) all Persons shall be precluded from asserting against Debtors, their successors, or their assets or properties any other or further Claims or Equity Interests based upon any act or omission, transaction, or other activity of any kind or nature that occurred before the Confirmation Date.

### C.    Discharge of Claims

Except as otherwise provided in this Plan or in the Confirmation Order, the rights afforded in this Plan and the payments and distributions to be made under the Plan shall be in complete exchange for, and in full satisfaction, discharge and release of, all existing debts and Claims of any kind, nature or description whatsoever against the Debtors, the Estate or any of their assets or properties; and upon the Effective Date, all existing Claims against the Debtors, their Estate and all of their assets and properties will be, and be deemed to be, exchanged, satisfied, discharged and released in full; and all holders of claims will be precluded from asserting against the Reorganized Debtors, their successors or their Assets or properties any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred before the Confirmation Date, whether or not the holder filed a proof of claim.

29

**D.**    <u>**Effect of Confirmation Order**</u>

Except as provided for in this Plan, the Confirmation Order will be a judicial determination of discharge of the Debtors from all debts that arose before the Confirmation Order and any liability on a Claim that is determined under Section 502 of the Bankruptcy Code as if such Claim had arisen before the Confirmation Date, whether or not a proof of claim based on any such date or liability is filed under Section 501 of the Bankruptcy Code and whether or not a Claim based on such debt or liability is allowed under Section 502 of the Bankruptcy Code.

**E.**    <u>**Severability**</u>

Should any provision in this Plan be determined to be unenforceable, that determination will in no way limit or affect the enforceability and operative effect of any provision of the Plan.

**F.**    <u>**Successors and Assigns**</u>

The rights and obligations of any person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of that Person.

**G.**    <u>**Binding Effect**</u>

The Plan will be binding upon and inure to the benefit of the Debtors, their Creditors, the holders of Equity Interests, and their respective successors and assigns.

**H.**    <u>**Governing Provisions**</u>

Where a provision of this Plan contains a summary or description of one or more provision of any of the documents attached to the Plan as an Exhibit that conflicts or appears to conflict with any such provision of an Exhibit, the provision of the Exhibit will govern.

**I.**    <u>**Filing of Additional Documents**</u>

On or before substantial consummation of this Plan, the Debtors will file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**J.** **Withholding and Reporting Requirements**

In connection with the Plan and all instruments issued and distributions made pursuant to the Plan, the Debtors will comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions made pursuant to the Plan will be subject to any such withholding and reporting requirements.

Dated: April 25, 2011

**15-35 HEMPSTEAD PROPERTIES, LLC AND JACKSON 299 HEMPSTEAD, LLC**

*/s/ Steven Kates*
Steven Kates

**CIARDI CIARDI & ASTIN**

*/s/ Albert A. Ciardi, III*
Albert A. Ciardi, III, Esquire
Jennifer E. Cranston, Esquire
Adrienne N. Roth, Esquire
One Commerce Square
2005 Market Street, Suite 1930
Philadelphia, PA 19103
Counsel to the Debtors and
Debtors-in-Possession

31