| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
|---|---|
| Caption in Compliance with D.N.J. 9004-2(c)<br><br>Robert E. Nies, Esq. (rnies@wolffsamson.com)<br>**WOLFF & SAMSON PC**<br>One Boland Drive<br>West Orange, NJ 07052<br>Tel: (973) 325-1500 Fax: (973) 530-2212<br><br>*Attorneys for Karen L. Gilman,*<br>*Chapter 11 Trustee* | |
| In re:<br><br>15-35 HEMPSTEAD PROPERTIES, LLC and JACKSON 299 HEMPSTEAD LLC,<br><br><br><br>Debtors. | Chapter: 11<br><br>Case Nos. 10-43178 (GMB) and<br>10-43180 (GMB)<br><br>*Jointly Administered*<br><br>Judge: Hon. Gloria M. Burns |

**VERIFIED APPLICATION IN SUPPORT OF CHAPTER 11 TRUSTEE'S MOTION SEEKING ENTRY OF AN ORDER (I) (A) APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF THE DEBTORS' REAL PROPERTY AND INTEREST IN REAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (B) APPROVING THE FORM AND MANNER OF NOTICE OF SUCH SALE AND BIDDING PROCEDURES, AND (C) SETTING THE HEARING DATE IN CONNECTION THEREWITH; AND (II) (A) AUTHORIZING AND APPROVING SUCH SALE TO THE PURCHASER SUBMITTING THE HIGHEST AND BEST OFFER, (B) WAIVING THE TEN DAY STAY PROVIDED BY FED. R. BANKR. P. 6004, AND (C) GRANTING RELATED RELIEF**

TO:   THE HONORABLE GLORIA M. BURNS
      UNITED STATES BANKRUPTCY JUDGE

Karen L. Gilman, Esq., the Chapter 11 Trustee (the "**Trustee**") for 15-35 Hempstead Properties, LLC and Jackson 299 Hempstead LLC (together, the "**Debtors**"), by and through her attorneys Wolff & Samson PC, respectfully submits this verified application (the "**Application**") for entry of an Order, pursuant to Sections 105(a), 363(b), (f) and (m), and 541(a) of Title 11 of

2709285.4

the United States Code, 11 U.S.C. §§101 *et seq.* (the "**Bankruptcy Code**") and Rules 2002, 6004, and 9019 of the Federal Rules of Bankruptcy Procedure(the "**Bankruptcy Rules**"), for entry of orders (I) (A) approving bidding procedures (the "**Bidding Procedures**") in connection with the Debtors' sale (the "**Sale**") of real property located at 101 Boardwalk, Atlantic City, New Jersey (the "**Property**"), free and clear of all liens,[1] claims, encumbrances and interests, (B) approving the form and manner of notice of the Sale and Bidding Procedures (the "**Sale Notice**"), and (C) setting the hearing date in connection with the Sale (hereafter, the "**Bidding Procedures Motion**");[2] and (II) (A) authorizing and approving the Sale to the highest and best offer (the "**Purchaser**"), (B) waiving the ten (10) day stay provided by Bankruptcy Rule 6004(h), and (C) granting related relief, and, in support thereof, respectfully states:

## INTRODUCTION

1.  Trustee seeks entry of an order: (1) scheduling an auction sale (the "**Auction**"); (2) approving the form of the proposed agreement of sale (the "**Agreement of Sale**") annexed hereto as **Exhibit A** for the sale of the Debtors' Property free and clear of all liens, claims, and interests, pursuant to section 363(b), (f) and (m) of the Bankruptcy Code, with all valid liens, claims, and interests, if any, to attach to the proceeds of sale; (3) authorizing the Trustee to solicit bids for the sale of the Property; (4) approving competitive bidding procedures related thereto; (5) scheduling a hearing date to approve the sale (the "**Sale Hearing**"); (6) approving the form, manner and sufficiency of notice of the Sale Hearing: (7) approving the sale of the Property to one or more qualified bidders at the hearing determined by the Trustee to be the highest and best

---

[1] Any capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Agreement of Sale (as defined herein).

[2] Concurrently herewith, Trustee has filed an application for order shortening time for an initial hearing to consider the relief requested in the Bidding Procedures Motion.

2709285.4

offer pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 6004 (the "**High Bid Price**") and (8) granting related relief (the "**Motion**").

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the Motion, pursuant to 28 U.S.C. § 1334 and the District Court General Order of Reference dated July 23, 1984. This is a core proceeding under 28 U.S.C. § 157(b).

3.      Venue of the case and the Motion in this judicial district is proper under 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief sought by the Motion are sections 105(a), 363(b), (f) and (m), 365(a) and 541(a) of the Bankruptcy Code.

5.      Such sale shall be free and clear of liens, claims, interests, encumbrances, any options on the properties and purchase contracts.

## BACKGROUND

6.      On October 26, 2010 (the "**Petition Date**"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**").

7.      On November 16, 2010, an Official Committee of Unsecured Creditors (the "**Committee**") was duly appointed, pursuant to section 1102 of the Bankruptcy Code, to represent creditors holding unsecured claims in these chapter 11 cases (the "**Chapter 11 Cases**"). [Docket No. 38]. The Committee retained the law firm of Fox Rothschild as its counsel. [Docket No. 53].

8.      On November 24, 2010, the Court entered an order authorizing joint administration of the Chapter 11 Cases. [Docket No. 60].

2709285.4

9. The Debtors are the owners of the Property, commonly known as The View.

10. By Order dated May 10, 2011, the Bankruptcy Court approved the appointment of the Trustee [Docket No. 202]. By Order dated May 18, 2011, the Bankruptcy Court approved the retention of Wolff & Samson PC, as attorneys for the Trustee [Docket No. 222].

## RELIEF REQUESTED AND BIDDING PROCEDURES

11. In her sound business judgment, Trustee has decided to sell the Property.

12. Moreover, Trustee has worked with NYCB on reaching a consensual agreement regarding the terms of the proposed Bidding Procedures and the financing of operations pending a completion of the sale process. To that end, Trustee, with the consent of NYCB, has sought separately to retain Racebrook Marketing Concepts, LLC d/b/a Sheldon Good and Company ("**Sheldon Good**" or the "**Auctioneer**") to market and sell the Property.[3]

13. In accordance with section 363(b)(1) of the Bankruptcy Code, and Bankruptcy Rule 6004(f)(1), Trustee seeks to sell the Property at an auction to be conducted by Sheldon Good. A copy of the proposed form of Agreement of Sale for the Property is annexed hereto as **Exhibit A**.

14. Trustee requests approval of the following bidding procedures, structured with the objective of obtaining the highest and best offer for the Property:

    (a) **"AS IS, WHERE IS":** Any bid shall be a bid to purchase the Property, shall be on an "AS IS, WHERE IS" free and clear of all liens, encumbrances, purchase contract, options, interests and claims, whether known or unknown, choate or inchoate, pursuant to section 363(f) of the Bankruptcy Code. The Trustee makes no representations or warranties whatsoever.

    (b) **Qualification to Bid:** To qualify to participate in the Auction, a bidder must (i) present at the Auction registration a cashier's or certified check

---

[3] Trustee has filed an application for the retention of Sheldon Good to market and sell the Property. A hearing on the retention is scheduled for June 7, 2011.

made payable to Sheldon Good, title company or as directed by the Trustee (the "**Deposit**") in the amount of $_____ with respect to the Property; (ii) have (or have its agent) inspected the Property; and (iii) purchase or receive a bidder's information Packet (as defined below).

(c) **Qualified Bidders:** Any bidder that qualifies will be a "Qualified Bidder". Only Qualified Bidders will be permitted to be present at the Auction and participate in bidding for the Property at the Auction. The Auctioneer shall reasonably determine in good faith, whether any bidder is a Qualified Bidder. New York Community Bank ("**NYCB**"), the holder of the first and second mortgages on the Property is deemed a Qualified Bidder and has the right, but not the obligation, to credit bid the value of its mortgages, without complying with the qualification requirements noted above.

(d) **Breach Of The Agreement Of Sale:** Any Deposit will be forfeited as liquidated damages and the Successful Bidder held liable for compensatory damages if the Successful Bidder fails to close by reason of its breach of the Agreement of Sale.

(e) **No Contingent Bids:** Bids may not be subject to financing, due diligence, zoning, environmental or any other contingency except the entry of an order of this Court approving the sale pursuant to section 363(b) of the Bankruptcy Code.

(f) **The Auction Format:** As to Qualified Bidders, all bidding is open and public. To bid during the Auction, a Qualified Bidder need only raise their hand, shout out their bid or instruct an auctioneer's bidder assistant to call out a bid on behalf of the Qualified Bidder.

(g) **Bidding at the Auction:**

   i. After the initial opening bid, all subsequent competing bids shall be in increments at the direction and discretion of the Auctioneer. No bid shall be of the same amount as any existing bid.

   ii. Auctioneer reserves the right to reopen the bidding and re-bid the Property, in the event of a bidding dispute occurring at the Auction.

   iii. Auctioneer reserves the right to determine with whom the bid is placed in the event of a tie or dispute.

   iv. Oral and written announcements made by the Auctioneer before the commencement of the bidding take precedent over any previously distributed materials.

5

2709285.4

      v. Bids made after the bidding is concluded at the Auction will not be considered by the Court.

(h) **Additional Requirements Of The Successful Bidder:** The Successful Bidder will also be required to sign the bidder's card upon the conclusion of bidding, acknowledging the purchase and tender the required certified or cashier's check as initial down payment to the Auctioneer. The Successful Bidder shall immediately sign the Agreement of Sale and escrowee shall deposit the initial down-payment. The initial down payment MUST be increased to 10% of the Total Purchase Price by cashier's or certified check, if applicable, either at the Auction or within two (2) business days following the Auction. No third party checks will be accepted. The Successful Bidder may also be asked to sign a statement that the Successful Bidder has inspected the Property. If the Agreement of Sale is to be signed with the purchaser being a corporation or partnership or trust, there are additional bidding requirements and the Successful Bidder should contact Sheldon Good to discuss these requirements in advance of the Action. In the sole discretion of the Trustee, Sheldon Good may qualify the next highest and best Successful Bidder (the **"Next Successful Bidder"**) in accordance with this provision and the Agreement of Sale to close the sale in the event the Successful Bidder defaults under the Agreement of Sale.

(i) **Appearance at Auction:** All Qualified Bidder(s) must appear in person or via telephone or through a duly authorized representative or by submitting a bid prior to the Auction to be entered into the bidding at the Auction.

(j) **Jurisdiction of Court:** The Auctioneer shall conduct the Sale for and as directed by the Court for the benefit of the parties. The Auctioneer, all bidders and their brokers or representatives are deemed to have submitted to the exclusive jurisdiction of the Court with respect to any dispute relating to all matters related to the Auction and all terms and conditions of the transfer of the Property.

(k) **Successful Bidder Default:** If any Successful Bidder fails to close the sale contemplated herein, it will be liable for and forfeit any Deposit and, in the sole discretion of the Trustee, the Trustee may close the sale with the Next Successful Bidder in accordance with the Agreement of Sale.

(l) **Closing:** The closing of the Sale pursuant to the Auction (the **"Closing"**) shall take place in accordance with the terms of the Agreement of Sale.

(m) **Bankruptcy Court Approval:** The Sale of the Property contemplated herein shall be subject to the entry of an order, or orders as the case may be, by the Court: (a) approving the Sale and transfer of the Property; and

(b) containing a finding that the Successful Bidder is a good faith Purchaser, pursuant to section 363(m) of the Bankruptcy Code.

(n) **Absolute Offerings:** The Final High Bids that are offered on the Property are absolute, without reserve, will be accepted at the time and place of the Auction, subject only to the approval of the United States Bankruptcy Court District of New Jersey. NYCB has the right, but not the obligation, to bid in accordance with the order entered by this Court regarding the Bidding Procedures.

(o) **The Sale Hearing:** A hearing to confirm the results of the Auction, if any, and/or to approve the Sale of the Property, will be held before The Honorable Gloria M. Burns, United States Bankruptcy Judge, at the Mitchell H. Cohen U.S. Courthouse, 400 Cooper Street, 4th Floor, Camden, New Jersey 08101, on _____ (the "**Sale Hearing**") or as soon there after as practically possible.

(p) **Modifications:** Trustee reserves the right to: (i) impose additional or different reasonable terms and conditions at or before the Auction, (ii) extend the deadlines set forth in the Sale Procedures and/or adjourn the Auction and/or the Sale Hearing in open court upon the consent of NYCB, which consent shall not be unreasonably withheld, without further notice, and (iii) Trustee may at any time, in her sole discretion, reject any and all bids that are not from Qualified Bidders.

(q) **Credit Bid:** NYCB shall be permitted to credit bid pursuant to section 363(k) of the Bankruptcy Code. NYCB is deemed a Qualified Bidder and shall be exempt from the qualification requirements, as set forth above, so long as such credit bid otherwise constitutes a qualified bid.

(r) **Buyer's Premium:** In addition to the final High Bid Price the Successful Bidder will pay a 7% (seven percent) premium (the "**Buyer's Premium**") as follows and in the priority set forth below:

(i) If the Property is purchased by a third party purchaser.[4]

---

[4] Specifically, any purchaser other than NYCB.

7

| Payee | Percentage of High Bid Price Paid (Exclusive of Buyer's Premium) | Funding Source |
|---|---|---|
| Sheldon Good | 3.0% | Third Party Purchaser |
| Debtors' Estates | 3.0%[5] | Third Party Purchaser |
| Allowed Unsecured Creditors | 1.0% | Third Party Purchaser |

    (ii)  If the Property is purchased by NYCB pursuant to a credit bid.

| Payee | Percentage of High Bid Price Paid (Exclusive of Buyer's Premium) | Funding Source |
|---|---|---|
| Sheldon Good | 1.5% | NYCB |
| Allowed Unsecured Creditors | .5%[6] | NYCB |

The Buyer's Premium shall be added to the Final High Bid Price and inserted in the Agreement of Sale to determine the Total Purchase Price.

  (s)  **Realtor®/Broker Participation Invited:** A referral fee of 1% (one percent) of the High Bid Price, excluding the Buyer's Premium (the **"Referral Fee"**), will be paid by the Auctioneer from the Debtors' Estates portion of the Buyer's Premium to the real estate broker, acting as a "Buyer Broker" whose client pays and closes on the Property. To qualify for the Referral Fee, the real estate agent must: (a) be a licensed real estate broker in the state in which the Property is located who will abide by the National Association of Realtors® Code of Ethics; (b) register the client by certified mail, return receipt requested, on company stationery, which must be signed by both the broker and the client and confirm the Buyer Broker arrangement, with **Sheldon Good and Company, A Racebrook Portfolio Company, 635 Madison Avenue, Suite 1203, New York, NY 10022, Attention: Project Manager**, received no later than three (3) business days prior to the auction date; (c) ensure that the registration letter is received before any inspection of the property by the client; (d) sign in and inspect the Property with the client during a

---

[5] Distributions from Debtors' Estates shall be made in the following order of priority: (1) to redeem and/or satisfy all tax sale certificates in connection with the Property; (2) payment of all title and closing costs customarily paid by Seller; (3) payment of a 1% fee (exclusive of Buyer's Premium) to a referring broker, if any, as qualified in subsection 14(s) infra; (4) payment of unpaid allowed administration expenses; and (5) remaining proceeds, if any, to NYCB.

[6] In addition to NYCB's payment to Allowed Unsecured Creditors, NYCB shall promptly pay to Debtors' Estates from the Sale Proceeds the shortfall, if any, in funds needed to pay priorities 1-4, set forth in footnote 5 above.

2709285.4

scheduled site inspection; and (e) attend the Auction with the client and bid with or for the client. All registrations accepted will be acknowledged; each acknowledged broker must bring his or her registration acknowledgment to an open house and to the auction for registration verification purposes. A complete registration file on all prospects will be maintained. No REALTOR®/Broker will be recognized for a client who has previously contacted or been contacted by the Trustee or her representative or the Auctioneer. No Referral Fees will be paid by the Auctioneer if the broker, the broker's agents or a member of the broker's immediate family is participating in the purchase of the Property or is an employee or partner of the Purchaser. An affidavit will be required certifying that the agent is serving only as a broker and not as a principal. There can be NO EXCEPTIONS to this procedure and no oral registrations will be accepted. Realtors®//Brokers are hereby notified that the Trustee has provided no commission arrangement for the sale of the Property in this offering. If a broker has not met all of these requirements, no Referral Fee will be paid to the broker, even if the broker's client purchases the Property.

(t)  **Documents Available:** A bidder's information packet (the **"Packet"**) has been assembled and may include such items as detailed Auction information, property description, legal description, the Agreement of Sale, preliminary title examination report, operating costs, detailed property information, rent roll, leases, environmental and other third party reports, real estate tax bill, local zoning information, local market information, survey, terms of sale, bidder's affidavit and other applicable information. The Packet is available for purchase via telephone, fax order or mail from Sheldon Good, at the on-site inspection. The purchase of a Packet is required prior to registering to bid at the Auction. The Trustee, the Trustee's Property Manager and Auctioneer shall not be liable for any inaccuracy contained in any reports furnished to buyers, including those originating from third party experts.

(u)  **Attorney Review Recommended:** All information contained in auction-related material, such as the Packet, should be carefully reviewed by a bidder's attorney prior to the Auction and is subject to and may be superseded by the Agreement of Sale and announcements made from the podium prior to the commencement of bidding.

(v)  **Conduct Of The Auction:** Neither the Trustee, the Trustee's agents or principals, nor the Auctioneer, are permitted to bid at the Auction. However, NYCB has the right but not the obligation to bid at the Auction under any order entered by this Court on the Bidding Procedures. Conduct of the Auction and increments of bidding are at the direction and discretion of the Auctioneer. The Trustee and the Auctioneer reserve the right to refuse admittance to or expel anyone from the Auction premises

2709285.4

for interference with Auction activities, nuisance, canvassing, soliciting, or other reasons deemed necessary by the Auctioneer. In the event of a dispute between bidders, the Auctioneer, with the consent of the Trustee, shall make the final decision to accept the final bid, to re-offer and/or re-sell the Property. If any disputes should arise following the Auction, the Auctioneer's records shall be conclusive in all respects.

(w) **Disclaimer:** Each Qualified Bidder, by submitting a bid for the Property, shall be deemed to acknowledge and represent:

- That it is bound by the Bidding Procedures contained herein;

- That it had an opportunity to inspect and examine the Property and to review all pertinent documents and information with respect to the Property prior to making its offer and that it relied solely upon its own investigation, own independent review, investigation and/or inspection of any documents and/or the Property in making its bid; and

- That it did not rely upon any written or oral statements, warranties or representatives of the Trustee, the Debtors, or the Debtors' agents regarding the Property, or the completeness of any information provided in connection with the Property, the bidding process or the Auction.

15. The Trustee believes that establishing the procedures described above for bidding on the Property will allow her to promptly review, analyze and compare all bids received and determine if a bid or bids are in the best interests of the bankruptcy estates of the Debtors.

## APPLICABLE LEGAL AUTHORITY

**A.    The Trustee Should Be Authorized To Sell The Property Pursuant To The Procedures Contained Herein Because Trustee is Selling The Property To A Good Faith Purchaser For A Sound Business Purpose**

16. The Trustee respectfully submits that she should be authorized to sell the Property subject to higher and better offers.

17. Section 363 (b) (1) of the Bankruptcy Code provides that a trustee, "after notice and a hearing, may use, sell, or lease, other than the ordinary course of business, property of the estate. . . ." 11 U.S.C. § 363(b)(1); *see also* Fed. R. Bankr. P. 6004(f)(1) (authorizing sales

2709285.4

outside of the ordinary course of business to be conducted privately or by public auction). Moreover, section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary and appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

18. Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan. However, courts in the Third Circuit have found that a sale of a debtor's assets should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business judgment exists for such a sale. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 395, (3d Cir. 1996); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del 1991) (applying the "sound business purpose test" set forth in *Comm. Of Equity Se. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983)).

19. Courts typically consider the following four factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was given to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith. *See In re Weatherly Frozen Food Group, Inc.*, 149 B.R. 480, 483 (Bankr. N.D. Ohio 1992); *Del. & Hudson Ry.*, 124 B.R. at 176; *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (BAnkr. D. Del. 1987); In re Titusville Country Club, 128 B.R. 396, 399 (Bankr. W.D.Pa 1991).

**(1)    A Sound Business Justification Exists For The Sale Of The Property**

20.    A sound business purpose for the sale of a debtor's assets outside the ordinary course of business may be found where such a sale is necessary to preserve the value of the assets for the debtor's estate and its creditors. See In re Lionel Corp., 722 F.2d at 1071.

21.    Courts have developed the following non-exclusive list of factors to consider in determining whether a sound business purpose exists:

- Sound business reason for the sale;

- Accurate and reasonable notice;

- Proportionate value of the asset to the estate as a whole (fair and reasonable);

- The amount of elapsed time since the filing;

- The likelihood that a plan of reorganization will be proposed and confirmed in the near future;

- The effect of the proposed disposition on the future plan;

- The amount of proceed to be obtained from the sale versus the appraised value of the property sold; and

- Whether the asset is decreasing or increasing in value.

*Lionel*, 722 F.2d at 1071; *Delaware & Hudson Railway*, 124, B.R. at 176.

22.    Courts have made clear that a showing of a sound business justification does not have to be unduly exhaustive. Rather, a debtor is "simply required to justify the proposed disposition with sound business reason . . . ." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Moreover, the paramount goal in any proposed sale of property of the estate is to maximize the value received by the estate. See *In re Food Barn Stores, Inc.*, 107 F.3d at 564-65 (8th Cir. 1997) (stating that in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated Res., Inc.*, 147 B.R. 650, 659 (S.D.N.Y

1992) ("It is a well-established principle of bankruptcy law that the . . . [debtors'] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate." (quoting *In re Atlanta Packaging Prods.*, Inc., 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)).

23. There is more than adequate business justification to sell the Property. Based upon an analysis of the Debtors' ongoing and future business prospects, Trustee, and her professional advisors, believe that the sale of the Property, pursuant to the terms and conditions set forth herein, is in the best interests of the Debtors' Estates. Accordingly, as set forth herein, the proposed Sale is supported by sound business reasons.

24. Shortly before the Trustee was appointed, the Debtors and their professionals acknowledged that the rental income generated by the Property should be approximately $160,000.00 a month, but projected it would only be $120,000.00 a month. To date, Debtors' projections have not proven to be accurate and rental income has declined dramatically. Nonetheless, monthly operating expenses are in conformity with projections previously provided by the former Property Manager of between approximately $160,000.00 to $175,000.000 a month. Without the use of NYCB's cash collateral and additional NYCB financing, there are insufficient funds to pay monthly operating expenses.

25. Moreover, during the post-petition period, the Debtors have failed to pay certain public utilities providing critical services to the Property such as: (i) Atlantic City Sewerage Company (waste water services); (ii) Atlantic City Electric Company (electricity services); Atlantic City Municipal Utilities Authority ("ACMUA") (water and fire services); and (iv) South Jersey Gas Company (natural gas). These post petition administrative expenses exceeded $200,000.00 at the time the Trustee was appointed. The Trustee is presently negotiating

2709285.4

payment terms of the administrative claims of the utility providers, while trying to assure that tenants at the Property receive uninterrupted service.

**(2)    The Trustee Is Providing Adequate Notice Of The Sale**

26.    In accordance with Bankruptcy Rule 6004, sales of property outside the ordinary course of business may be by private sale or public auction. Fed. R. Bankr. P. 6004(f)(1). Bankruptcy Rule 6004 further provides that "[n]otice of a proposed use, sale, or lease of property, other than cash collateral, not in the ordinary course of business shall be given pursuant to Rule 2003(a)(2), (c)(1), (i), and (k) and, if applicable, in accordance with §363(b)(2) of the Code." Fed. R. Bankr. P. 6004(a). Pursuant to Bankruptcy Rule 2002(a)(2) this Bankruptcy Court may, for cause shown, shorten or direct another method of giving notice regarding the general twenty-day-by-mail period for the proposed use, sale, or lease of the estate's property outside the ordinary course of business. Fed. R. Bankr. P. 2002(a)(2). Pursuant to Bankruptcy Rule 2002(c)(1), the notice of the proposed use, sale, or lease of property required under Bankruptcy Rule 2002(a)(2) must include the time and place of any public sale, the terms and conditions of any private sale, and the time fixed for filing objections. Fed. R. Bankr. P. 2002(c)(1). Moreover, the notice of a proposed use, sale, or lease of property is sufficient if it generally describes the property being sold. *Id.*

27.    The proposed timing of the Sale Hearing is well within the notice procedures mandated by the Bankruptcy Rules. Here, the form and manner of the notice of Motion and the procedures used for soliciting higher and better offers for the Property have been submitted for approval by this Court and will ensure that any and all interested parties will receive adequate notice of the Auction. Accordingly, the Trustee submits that the notices, procedures, and rules set forth in this Motion satisfy the notice requirements of the Bankruptcy Rules and section

14

363(b) of the Bankruptcy Code, constitute good and sufficient notice, and that no other or further notice is required.

(3) **The Property Will Be Sold for Fair Value**

28. Courts will only approve section 363(b) sales if the sale obtains a fair and reasonable price for the assets. *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Indus. Valley Refrigeration and Air Conditioning Supplies, Inc.*, 77 B.R. 15, 20-21 (Bankr. E.D. Pa. 1987).

29. At the Sale Hearing, the Trustee will demonstrate that the Successful Bidder bought the Property for "value." At a minimum, because the Sale of the Property will have been the subject of marketing and higher and better bids both before and at the Auction, the Trustee is confident that the Property's value will be maximized.

(4) **The Good Faith Buyer Requirement**

30. Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). While the Bankruptcy Code does not define "good faith," the Third Circuit has construed the "good faith buyer" standard to mean one who purchases "in good faith" and for "value." *See In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147, 149-50 (3d Cir. 1986).

> The requirement that a purchaser act in good faith speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the

15

purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

*Abbots*, 788 F.2d at 147 (citing In re Rock Industries Machinery Corp., 572 F.2d 1195, 1197-1198 (7th Cir. 1978)).

31. Here, all negotiations will be at arms length, and the parties will have at all times acted in good faith.

32. As set forth above, in the event that there are Qualified Bidders, the Trustee will select the highest and best offer. Courts have indicated that a party must show fraud or collusion between a purchaser and the debtor or trustee in order to demonstrate a lack of good faith. *Abbotts Dairies*, 788 F.2d at 147. In light of the marketing efforts, the open sale process and the fact that under the Bidding Procedures each Qualified Bidder is deemed to acknowledge that it is not an insider of the Debtors, nothing here suggests any fraud or collusion. Accordingly, the Trustee requests that the Court make a finding that any Purchaser submitting a higher and better offer will be purchasing the Property in good faith within the meaning of section 363(m) of the Bankruptcy Code and, thus, entitled to the protections set forth therein.

**B.    The Trustee Should Be Authorized To Sell The Property Free And Clear Of All Liens Pursuant to Section 363(f) Of The Bankruptcy Code**

33. In accordance with section 363(f) of the Bankruptcy Code, a trustee may sell property under section 363(b) "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

    a.    Applicable nonbankruptcy law permits sale of such property free and clear of such interest;

    b.    Such entity consents;

    c.    Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    d.    Such interest is in bona fide dispute; or

16

   e.  Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Because section 363(f) of the Bankruptcy Code is stated in the disjunctive, satisfaction of any one of its five requirements will suffice to warrant approval of the proposed sale of the Property. *Folger Adam Sec. Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 257 (3d Cir. 2000) (discussing how section 363(f) of the Bankruptcy Code authorizes the sale of a debtor's assets free and clear of all liens, claims and interests if "any one of [the] five prescribed conditions" is met); *In re Kelistrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del 2002) (stating that a court may approve a sale "free and clear" provided at least one of the subsections of section 363(f) is met); *see also DVI, Inc.*, 306 B.R. 496, 503 (Bankr. D. Del 2004).

  34. A sale free and clear of liens, claims, interests, options, and encumbrances (with the exception of real estate taxes) is necessary to maximize the value of the Property. Here, the liens held by NYCB represent a significant encumbrance. Pending the Trustee's compliance with one of the above factors, the Trustee should be authorized to sell the Property free of any and all liens asserted against the Property.

  35. Here, NYCB has consented to the sale of the Property and its liens shall be satisfied at the closing on the sale of the Property.

  36. Based upon the foregoing, the Trustee requests this Court permit the Sale process to move forward.

**C.** **Waiver Of Ten Day Stay Under Bankruptcy Rule 6004(h)**

  37. Pursuant to Bankruptcy Rule 6004(h), unless the court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for ten days after entry of such order, "unless the court orders otherwise." *See* Fed. R. Bankr. P. 6004(h).

2709285.4

Case 10-43178-GMB    Doc 249    Filed 06/07/11    Entered 06/07/11 15:14:57    Desc Main
Document    Page 18 of 20


38. Waiving the ten day stay under Bankruptcy Rule 6004(h) is necessary to permit the Trustee to minimize these costs by closing the proposed sale transaction as soon as possible after the entry of the Sale Order. A copy of the proposed form of Sale Order that has been approved and negotiated by the Trustee and NYCB is annexed hereto as **Exhibit B.**

## NOTICE

39. Notice of this Motion has been given to: (1) the United States Trustee for the District of New Jersey; (2) counsel for Debtors' secured lender; (3) counsel for the Official Committee of Unsecured Creditors; (4) all parties that timely have requested notice in these cases; and (5) all entities known to have expressed a *bona fide* interest in acquiring the Property. In light of the nature of the relief requested herein, the Trustee submits that no other or further notice is required.

## NO PRIOR REQUEST

40. No previous motion for the relief sought herein has been made to this or to any other court.

## WAIVER OF BRIEF

41. As no novel issue of law is raised and the relevant authorities relied upon by the Trustee are set forth herein, the Trustee respectfully requests that the requirement of D.N.J. LBR 9013-2 of filing a brief be waived.

18

2709285.4

## CONCLUSION

WHEREFORE, the Trustee respectfully requests entry of the Bidding Procedures Order and, subsequently, the Sale Order; and grant such other and further relief as this Court deems just and proper.

          Respectfully submitted,

          WOLFF & SAMSON PC

          */s/ Robert E. Nies*
          Robert E. Nies, Esq. (rnies@wolffsamson.com)
          One Boland Drive
          West Orange, NJ 07052
          Tel: (973) 325-1500 Fax: (973) 530-2212

          *Attorneys for Karen L. Gilman, Chapter 11 Trustee*

Dated: June 7, 2011

2709285.4

## VERIFICATION PURSUANT TO 28 U.S.C. § 1746

I, Karen L. Gilman, hereby verify that the foregoing statements are true and correct to the best of my knowledge and belief.

DATED: June 7, 2011                    /s/ *Karen L. Gilman*
                                              KAREN L. GILMAN

2709285.4